[Crim. No. 815. Third Appellate District.—October 15, 1924.]

THE PEOPLE, Respondent, v. A. L. NICHOLS, Appellant.

[1] CRIMINAL LAW — INTOXICATING LIQUORS — EVIDENCE — ERRONEOUS COMMENTS OF TRIAL COURT.—In this prosecution for unlawfully selling intoxicating liquors contrary to the provisions of the Wright Act, in which a witness for the defense testified concerning conversations had with reference to the intoxicated condition of the prosecuting witnesses and their women companions, the comments of the trial court during the examination of said witness for the defense, whether justified or not by the attitude of the attorney for defendant, were not in line with the testimony of said witness, and constituted error.

[2] ID.—FAILURE TO STOP DRIVING OF AUTOMOBILE—IMPROPER CROSS-EXAMINATION.—In such prosecution, error was also committed in overruling defendant's objection to the question, asked by the prosecution of a witness for the defense who had testified to the intoxicated condition of the prosecuting witnesses and their

---

1. See 26 R. C. L. 1026.

women companions, as to whether he "did anything to stop those. drunken people from driving that automobile."

[3] ID.—GIVING OF CUE TO WITNESS—IMPROPER ACCUSATION BY COURT. In such prosecution, a witness for the defense having testified as to what she saw at the table where the prosecuting witnesses and their women companions had been seated and in the hallway and in the women's dressing-room, that she did not know who caused it, and that her sister had told her that it was caused by one of the women, the act of counsel for defense in stating (in response to the prosecution's objection that the testimony was irrelevant and hearsay) that her sister told her it was a woman, was in conformity with the record, and the remark of the trial court that counsel had given the witness a cue was not well-founded, and the testimony of the witness was exposed to the possibility of being lowered in the estimation of the jury by the comments of the court, as to how the witness was being assisted by counsel.

[4] ID.—IMPUTATIONS UPON GOOD FAITH OF COUNSEL—DEPRIVATION OF FAIR TRIAL.—Imputations upon the good faith of counsel for the defendant, made in the presence of the jury, certainly do not help the cause of the defendant, or tend to give the defendant that fair and impartial trial to which everyone, no matter how guilty, is entitled.

[5] ID.—ERRONEOUS INSTRUCTION — PREJUDICIAL ERROR — PROVINCE OF APPELLATE COURT—CONSTITUTIONAL LAW.—Under the provisions of section 4½ of article VI of the state constitution, whether the giving of an erroneous instruction does or does not constitute reversible error, depends in large measure upon the conclusion of the court of appeal as to whether there has or has not been a miscarriage of justice by reason thereof; and where there is a strong conflict in the evidence and the determination of the cause depends upon the credibility to be given to certain witnesses by the jury, and the court gives an erroneous instruction which tends to disparage such witnesses in the estimation of the jury, the people are not entitled to rely upon the said constitutional provisions, and the defendant has not been given the fair and impartial trial to which all persons accused of crime were entitled.

[6] ID.—DEFENSE OF ALIBI—CONFLICTING EVIDENCE—PREJUDICIALLY ERRONEOUS INSTRUCTION.—In a prosecution for selling intoxicating liquors contrary to provisions of the Wright Act, where the evidence is sharply conflicting, particularly with reference to the defense of an alibi, but preponderates in favor of defendant, and the trial court has been guilty of misconduct in the matter of examination of witnesses for the defense and has made erroneous

4.  See 26 R. C. L. 1029.
6.  Instruction disparaging defense of alibi, note, 14 A. L. R. 1426.

rulings with reference to the admission of evidence, it is prejudicial error for the trial court, after instructing the jury that they are not to hesitate to give the defense of alibi full weight, to give the further instruction that "you are to scrutinize the testimony offered in support of an alibi with care, that you may be satisfied that a fabricated defense is not being imposed upon you."

(1) 16 **C. J.**, pp. 832, 833, sec. 2102. (2) 40 **Cyc.**, p. 2489. (3) 16 **C. J.**, p. 830, sec. 2097, p. 834, sec. 2104. (4) 16 **C. J.**, p. 830, sec. 2097. (5) 17 **C. J.**, p. 369, sec. 3751. (6) 16 **C. J.**, p. 979, sec. 2379; 17 **C. J.**, p. 369, sec. 3751.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

S. Luke Howe and Markham Johnston for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was indicted, tried, and convicted of the offense of unlawfully selling intoxicating liquors contrary to the provisions of the Wright Act, on or about the twenty-seventh day of April, 1924, at the county of Sacramento, state of California. His motion for a new trial having been denied, he appeals from said order and the judgment pronounced against him in this cause.

It appears that the defendant is the proprietor of a certain roadhouse, known and commonly called the "Rainbow Inn," situate on the Folsom Boulevard at a point where said boulevard is intersected by the Fair Oaks highway.

As grounds for reversal, the appellant alleges misconduct by the trial court consisting of numerous remarks and questions propounded to various witnesses during the course of the trial; also, that the court misdirected the jury in matters of law.

The testimony shows that on or about the twenty-seventh day of April, 1924, A. O. Baker and W. S. Russell, the prosecuting witnesses in this cause, accompanied by two women, names not disclosed, identification not furnished, went to the roadhouse kept by the defendant, named and

known as above stated, had dinner, which had previously been arranged for, and were then and there served with the intoxicating liquors described in the testimony, and upon analysis found to contain more than the allowed percentage of alcohol. The prosecution rested entirely upon the testimony of the witnesses Baker and Russell as to the sale of the intoxicating liquor. The two women were not called, nor does there appear any reason why their testimony was not introduced. On the part of the defendant the testimony of five witnesses, in addition to his own, was introduced. The testimony of Baker and Russell is to the effect that one Mrs. Dee Thomes acted as waitress for the dinner served Baker, Russell, and the two women, that liquor was called for, that Mrs. Thomes stated the house had none, that Mr. Nichols was away, and that afterward when Mr. Nichols returned the liquor was served by Mrs. Thomes. On the part of the defendant all of the witnesses testified that the defendant Nichols was away from the Rainbow Inn on the twenty-seventh day of April, 1924, during all the entire period of time while Baker, Russell, and the two women were inside said building. The testimony of the witnesses Thomes and Nichols was to the effect that during the afternoon of said day they had gone to Roseville, and did not leave Roseville until about 8 o'clock, that they reached the Rainbow Inn just as the witnesses Baker and Russell and the two women were departing from said roadhouse. The testimony of the other witnesses for the appellant is to the effect that Baker and Russell and the two women brought with them the liquor consumed at the roadhouse, and that no liquor was furnished to said parties, or to any member of the party. The testimony is also to the effect that the dining party was so far under the influence of intoxicating liquor that they did considerable damage to the tablecloth covering the table around which they were seated, and upon which the dinner was served, and for which damage Baker and Russell were charged a sufficient sum, in addition to the price of the dinner, to recompense the house. Without setting forth the testimony in detail, it is sufficient to say that it was in sharp conflict all the way through. All of the witnesses present at the time of the arrival of the party at the Rainbow Inn testified as to the intoxicated con-

dition of the members thereof and two, who, according to
their evidence, arrived just at the time when the party was
leaving in their automobile, was to the same effect. This
condition was denied by both Baker and Russell, but all
the facts and circumstances connected with the dinner, the
damage to the tablecloth and the act of the two women
would lead to the conclusion that the intoxicated condition
existed. The question only remains as to who furnished
the liquor. Here again there is a sharp conflict. The
testimony of several of the witnesses for the defendant was
to the effect that the dining party brought their own liquor.
The testimony of the witness was that she furnished none
and that the diners had their own intoxicants. To the same
effect was the testimony of Mrs. Nichols. The testimony
of the witness McWilliams was to the effect that he was
sitting at a lunch counter in the building near a certain
soda-fountain, that while he was there the party came in
under the influence of liquor, that they had bottles of wine,
that he saw a bottle of wine in pockets of both of the wit-
nesses Baker and Russell, "had a dark colored bottle. . . .
I saw the party served with chicken, potatoes and coffee,
but saw no liquor served; that the two men staggered when
they walked from the room where I was and were under
the influence of liquor."

During the course of the trial the trial court participated
to a considerable extent in the examination of witnesses and
added some comments which are assigned as error, but, for
the reasons hereafter given, we do not need to set them all
out in detail. Some of them, however, must be considered.
While the witness McWilliams was on the witness-stand,
the record shows the following: " (By Mr. Henderson) : Q.
Did you have any conversation with Mrs. Nichols about their
condition at that time? A. No, sir. Q. You did not men-
tion anything to her about it? A. No, sir. Q. It didn't
excite your curiosity, I take it, at all, that two women on
a Sunday evening, and two men came in there so drunk
they staggered? Mr. Johnson: Just a moment. I object
to that as an improper question. The Court: The objection
is overruled. He testified to a condition here, and he tes-
tified whether or not they discussed it at that time. They
have a right to ask that." (The question before referred to
was not answered.) The witness then testified as to the

vomiting by one of the women. "(By Henderson): You were there, sitting at the end of the table? A. At the end of the counter. . . . Q. From where you were sitting, you could see she vomited? A. Yes, sir. The Court: I think he said a minute ago that nobody mentioned about them being intoxicated while they were in there? Mr. Henderson: Sir? The Court: I think he said a minute ago that nobody mentioned about them being intoxicated while they were in there. Mr. Howe: No, Judge, I don't think he said that. Mr. Henderson: Yes, he said there was nothing said about them being intoxicated. Mr. Johnson: By whom does your Honor mean; nothing was said of whom? The Court: By these people, nothing said about their being intoxicated while they were in there; is that right? Witness: I couldn't say whether I did or not. The Court: Do you say they were? A. I didn't mention it at all. The Court: I take it there was something unusual there, then, when this woman vomited out there all over the place; nobody mentioned it, at all? Witness: They were leaving, then. The Court: Q. Nobody mentioned it; then, it didn't appear to be any unusual occurrence. Mr. Johnson: If your Honor please, I take exception to the court's questions along that line, and assign it as misconduct. The Court: I want to find out if they discussed it. Mr. Johnson: I suggest, if your Honor please, that the court should not cross-examine the witness. The Court: Well, Mr. Johnson, the court will suggest to you that it will examine this witness when it feels like it, and if you will attend to your end of the business, the court will attend to its. I don't want any suggestion from you as to how the court will conduct the business of the court. Another suggestion from you, and the court will make a suggestion to you. You just attend to your business in this work and the court will attend to its. If you have any objection to make, you make your objection, and the court will rule on it. Mr. Johnson: I want the court to understand I didn't make any reflection on the court. The Court: That is enough. You have spoken, and the court has ruled. Sit down. Q. Now, there wasn't anything said about when this lady vomited over the carpet there, no comment was made or said about her being intoxicated? Mr. Johnson: Same objection, your Honor. The Court: Same ruling. A. It was after they left, Mrs. Nichols and her sister were

talking there in the kitchen. I couldn't hear what they were saying. Q. Somebody was talking in the kitchen after that, and you couldn't hear what they said. Mr. Johnson: Same objection. A. About the woman throwing up on the floor.''

[1] It thus appears from the transcript that the witness simply stated that he did not have any conversation with Mrs. Nichols about the condition of the women at a certain time, or did not state that anybody was talking about the condition of the party, and that after the party had gone the witness heard the women at the inn talking, but did not hear what they said, and the comments of the court, whether justified or not by the attitude of the attorney, were not in line with the testimony of the witness; as one indicated that no comments were made and the other that he did not know what Mrs. Nichols and her sister were saying when they were talking. [2] Again, in connection with this witness, error was also committed in the admission of certain evidence. After having testified as to the intoxicated condition of the party, the witness McWilliams was interrogated by the prosecuting attorney as follows: ''Q. I will ask you, Mr. McWilliams, if you did anything to stop those drunken people from driving that automobile? Mr. Johnson: To which we object as incompetent, irrelevant, and immaterial. There is no such duty cast upon anyone. Mr. Henderson: There is a duty cast upon every good citizen, if your honor please, to stop anybody that is in the condition this witness testifies that these two women and two men were, to stop them from getting into an automobile, to deal death along the highway. The Court: That might be immaterial, because it would not tend to show the guilt of the defendant here, or would not either prove or disprove their guilt of the thing charged in the indictment what these men did. It might be admissible for the purpose of enabling the jury to determine whether he was there; for that reason, the objection is overruled, for the purpose of assisting the jury to determine whether he was there, at all, or not.'' We have not been cited to any rule of evidence upon which any such question could be predicated, and the evident purpose of the question was to give the district attorney the basis for his statement as to the duty of a good citizen, and so disparage the witness who was testifying. Testimony along this line

should have been excluded. [3] During the giving of the testimony of Mrs. Thomes we note the following: "Mr. Henderson: Q. . . . Now, getting back to the number of holes in the tablecloth, can you give us any recollection of the number for which you charged this two and a half? Witness: I couldn't say the exact number. Mr. Henderson: Q. Well, what is your best recollection. . . . A. Well, there was a good number, but I couldn't say the exact. . . . Q. What do you call a good number?" Objection made by Mr. Johnson. "The Court: The objection is overruled. A goodly number is a general term that might mean two or three or it might mean a hundred, so he is entitled to have that brought out. Mr. Johnson: She says she doesn't know. The Court: She is here testifying about the number of holes there, and she used that general expression 'goodly number,'—'a good number'—and similar expressions. It doesn't mean anything, 'goodly number.' Mr. Johnson: I submit, if your Honor please, two or three holes is as bad as half a dozen. The Court: Let the witness testify whether it was fifty holes or a hundred. She testified she was present and saw them. She ought to be in a better position than anyone else, to testify concerning them." Answer by the witness: "Well, I would say there was around ten or twelve, something like that. I couldn't say definitely because I didn't count them." In the course of the further questioning of the witness Mrs. Nichols the transcript shows the following: "Mr. Johnson: What did you find? A. Well, I found the tablecloth with wine spilt on it, and cigarette holes burnt in the tablecloth. Q. Find anything on the floor? A. It looked as though a woman had vomited on the floor. Q. Well, did you look in the hallway? A. Yes. Q. Did you find anything there? A. The same in the hallway. Q. And in the woman's dressing-room? A. Yes. Q. What did you find there, if anything? A. I found the same. Q. Do you know which one caused that? A. No, I don't. Q. When you said a woman a minute ago, I assume you took that from the other testimony that you heard. A. My sister told me it was one of the women. I don't know. Mr. Henderson: Now, if the court please, it shows the irrelevancy and immateriality of this testimony. It is clearly hearsay. She testified in answer to Mr. Johnson's question that she saw these

things; now, she testified her sister told her. Mr. Howe: Her sister told her it was a woman. The Court: Mr. Howe, when the witness apparently gets confused, if you will just let the witness straighten it out, instead of your suggesting the solution to her. Mr. Howe: Did I make the suggestion? The Court: Yes, of course; you said what she meant. You straightened it out, and turned it around, so the witness could see what was said. Mr. Johnson: Let the record be read. Mr. Howe merely stated what was testified to. The Court: Read Mr. Howe's statement then. (The reporter thereupon read counsel's statement, as follows: 'Mr. Howe: Her sister told her it was a woman.') The Court: That is it. He said her sister told her it was a woman. She didn't say anything of the kind; Mr. Howe suggested the answer so the witness would take the cue. Mr. Johnson: That answer was in the record before Mr. Howe made the remark. How could he make the cue. The Court: That is the cue Mr. Howe gave. Let the witness testify.''

It thus clearly appears from the transcript that the witness had stated in so many words "my sister told me it was one of the women" before counsel repeated her testimony, and that the remarks of the court that the witness had been given a cue, were not well-founded, and the testimony of the witness exposed to the possibility of being lowered in the estimation of the jury by the comments of the court, as to how the witness was being assisted by counsel. [4] Imputations upon the good faith of counsel for the defendant, made in the presence of the jury, certainly do not help the cause of the defendant, or tend to give the defendant that fair and impartial trial to which everyone, no matter how guilty, is entitled. We do not wish to be understood as holding that the judge of a trial court is to act merely as an umpire between two contestants and not to direct the course of the trial, but it is nevertheless true that every remark made by the trial court tending to disparage either party to the cause, has more or less effect upon the jury, unskilled as a rule in court proceedings, and may be said always ready to accept an intimation from the court as to what their verdict should be. In connection with the errors which we have pointed out, and in view of the fact that the transcript shows that the testimony largely preponderates in favor of

the defendant, the correctness of the instructions of the trial
court becomes material.

During the course of its instructions to the trial jury the
court gave the following: "While you are not to hesitate at
giving this (defense of alibi) as a defense full weight, that
conclusive effect to which, when established, it is justly en-
titled, either as entirely satisfying you of the innocence of
the defendant or as creating the reasonable doubt which en-
titles the defendant to an acquittal still, you are to scrutinize
the testimony offered in support of an alibi with care, that
you may be satisfied that a *fabricated* defense is not being
imposed upon you."

In support of the giving of the above the People rely upon
the case of *People* v. *Barr,* 55 Cal. App. 321 [203 Pac. 827],
where a similar instruction was given and was held not to
constitute reversible error. In that case, however, other
cases holding the giving of such instruction to be erroneous
appear not to have been considered. It is also pointed out
that such an instruction should not be given. [5] Under
the provisions of section $4\frac{1}{2}$ of article VI of the state con-
stitution, whether the giving of an erroneous instruction
does or does not constitute reversible error depends in large
measure upon the conclusion of the court of appeal as to
whether there has or has not been a miscarriage of justice
by reason thereof. If it appears to the appellate court that
the conclusion of the jury would have been the same with
or without the instruction, then, and in that case, it cannot
be said that a miscarriage of justice has resulted, but, where
there is a strong conflict in the evidence and the determina-
tion of the cause depends upon the credibility to be given to
certain witnesses by the jury, and the court gives an errone-
ous instruction which tends to disparage such witnesses in
the estimation of the jury, then and in that case we think
that the people are not entitled to rely upon the provisions
of the constitutional provision referred to, but that the de-
fendant has not, under such circumstances, been given a
fair and impartial trial to which all persons accused of
crime are entitled.

This court, in a very recent case, had occasion to review
a similar instruction and to point out the manner in which
it invades the rights of a defendant. We refer to the case

of *People* v. *Girroti,* 67 Cal. App. 399 [227 Pac. 936]. The rule in that case is supported by abundant authority, and we quote therefrom the following:

"A similar instruction was considered in *People* v. *Lee Gam,* 69 Cal. 552, 554 [11 Pac. 183, 184], where the court said: 'Taking the charge as a whole, and giving it an unstrained interpretation, it does not appear that the jury were instructed upon the weight of the evidence.' In *People* v. *Levine,* 85 Cal. 39, 42 [22 Pac. 969, 24 Pac. 631], it is said: 'The defense of alibi is, in our judgment, not one requiring that the evidence given in support of it should be scrutinized otherwise or differently from that given in support of any other issue in a cause.' In *People* v. *Lattimore,* 86 Cal. 403, 405 [24 Pac. 1091], it is said: 'If trial courts will cease to give this particular form of instruction, the ends of justice will be equally subserved, and the administration of the laws less embarrassed.' In *People* v. *Roberts,* 122 Cal. 377, 378 [65 Pac. 137], the trial court had instructed the jury that 'when satisfactorily proven,' an alibi is a good defense. The Supreme Court said: 'When a jury is told that any particular fact must be established to their satisfaction, such statement can only mean that such fact must be established at least by a preponderance of evidence; yet there is no such burden cast upon a defendant charged with a crime, except in certain particular instances which are in no sense presented here. . . . It is thus apparent that the alibi, to be efficacious to a defendant, need not be "satisfactorily proven," and need not be established to the satisfaction of the jury.' In *People* v. *Smith,* 189 Cal. 31, 37 [207 Pac. 518], an instruction substantially identical with that in the instant case was under consideration. The court said: 'In *People* v. *Roberts,* 122 Cal. 377 [65 Pac. 137], a similar instruction was held to be reversible error, upon the grounds that they constitute a charge upon the weight of the evidence, and that they cast the burden of proof upon the defendant.' If the jurors are to 'be satisfied that a fabricated defense is not being imposed upon' them, the burden is cast upon the defendant to satisfy them that such defense is not fabricated, that is, that it is true. The instruction not only casts an unwarranted burden upon the defendant but casts suspicion upon his defense and the evidence pro-

duced in support thereof. It is essentially an argument against the defendant, legitimate if made by the district attorney, but an invasion of the province of the jury when made by the court. The giving of the instruction has been condoned in a number of cases where the rights of the defendants did not appear to have been prejudiced thereby. Where a defendant presents substantial proof of an alibi, the jury should be left free to pass upon the weight thereof, under the rules of evidence applicable to other questions of fact; and if unsubstantial proof is produced, the jury may be trusted to reject it. The instruction should never be given.''

[6] We think the same ruling should be made in this case as was had in the one which we have just quoted. The judgment and the order are reversed.

Finch, P. J., and Hart, J., concurred.