[Crim. No. 354.  Fourth Appellate District.—December 17, 1937.]

THE PEOPLE, Respondent, v. CHARLES ROMO, Appellant.

Albert Ford for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged, jointly with one Jim Cay, with a violation of section 288a of the Penal Code. Cay pleaded guilty and the defendant was convicted by the verdict of a jury. He appeals from the judgment on the grounds that the court erred in giving and refusing certain instructions, coupled with the claim that the evidence is sufficient to raise a reasonable doubt as to whether he consented to or participated in the act charged.

The appellant, who had lived all of his life in Riverside County, had been arrested for intoxication on many occasions but had never been arrested for any other offense. At 7:30 P. M. on July 19, 1937, he was arrested for intoxication and placed in the city jail in a tank which had several cells opening from it, and in which one other prisoner was confined. At 8 P. M. Jim Cay was arrested and placed in this tank. About 8:30 P. M. a trusty in the jail went down to take a bath. After he had completed his bath he heard Cay saying to Romo "Come on, just give me a chance," which was repeated several times. This was followed by a "rumpus" and Romo stumbled or fell, and the trusty saw him getting up from the floor. The trusty went back upstairs where he heard Cay repeating "just give me a chance" about three times, and went back down to see what was wrong. At this time he observed the act being committed by Cay upon the person of Romo. The trusty called two officers, who also observed the act being committed. The third person who was in the tank testified that he heard Cay telling Romo to "give it to him or something like that" continually for several minutes and heard Romo say "Leave me alone" several times, and heard a scuffle like someone had dropped to the floor.

The appellant's defense was based entirely upon the contention that because of his intoxication he did not know what occurred on this occasion and that if any violation of the act in question occurred, it was without his consent and without any intent on his part to commit the same. His testimony supports this contention, as does part of the other evidence. While the officers admitted that the appellant was intoxicated when he was placed in jail one of them testified that he was "not as drunk" at the time in question as when he was put in jail and the other testified that at the later time

he did not seem to be drunk and was able to handle himself and "do what he was told to do". While the evidence is conflicting it is sufficient to support either conclusion which might have been reached by the jury upon the question as to whether or not the appellant was so intoxicated at the time as not to have been able to give his consent and as not to have understood what was being done.

The following instruction was given: "It is a well settled rule that drunkenness is no excuse for the commission of crime. Intoxication does not destroy responsibility when the party made himself voluntarily intoxicated; and drunkenness forms no defense whatever to the fact of guilt; for, when a crime is committed by a party while in a fit of intoxication, the law will not allow him to avail himself of his own gross vice and misconduct to shelter himself from the legal consequences of such crime. Evidence of drunkenness can only be considered by the jury for the purpose of determining the degree of crime, and for that purpose it must be received with great caution." A little later this instruction was given: "You are instructed that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition." After the jury had been correctly instructed as to the rules which should be followed in determining the credibility of witnesses, including the fact that their interest in the case might be taken into consideration, an instruction was given particularly setting forth rules which were to be applied in considering the testimony of the appellant in which the jurors were told that it was proper for them to bear in mind "the situation of the defendant, the manner in which he may be affected by your verdict, and the very grave interest he must feel in it; and it is proper for the jury to consider whether this position and interest may not affect his credibility and color his testimony".

In effect the jury was instructed that the matter of intoxication could have no bearing in this case and the appellant was thus prevented from having his defense, lack of knowledge and consent, considered by the jury. In *People* v. *Seigel,* 2 Cal. App. (2d) 620 [38 Pac. (2d) 450], the court said:

"Section 22 of the Penal Code specifies that no act committed by a person while in a state of voluntary intoxication

is less criminal by reason of his having been in such condition, yet whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act. The instructions of the court specifically covered the question of intoxication and directed the jury if they found such a degree of intoxication that defendant was unable to give his consent, then and in that case, a verdict of not guilty should be returned. This, of course, covers the question of motive and intent as clearly as though the section had been read to the jury.''

In the instant case the court did not read section 22 to the jury, the instruction given omitted an important provision of that section and the jury was neither directly nor impliedly told that a verdict of not guilty should be returned if they found that the appellant was at the time in such a degree of intoxication as to be unable to give his consent. The effect of the first instruction on drunkenness was emphasized by a second instruction on the same subject, which contains the further statement, erroneous when not qualified, that no act committed by a person while in a state of intoxication is less criminal by reason of his having been in that condition. ■ The errors thus appearing were increased by the further entirely unnecessary instruction inviting the jury to particularly consider whether the interest of the appellant had not led him to color his testimony. Regardless of whether or not the latter instruction would be sufficiently prejudicial, in itself, to justify a reversal it has been held that instructions of that character should not be given. (*People* v. *Quon Foo,* 57 Cal. App. 237 [206 Pac. 1028].)

Several instructions were refused which would have submitted to the jury the issue as to whether the act charged was committed by Cay upon the person of the appellant without his consent or knowledge or without any intent on his part to commit the act. The respondent argues that all of these matters were fully covered by two instructions to the effect that the word ''participate'' implies knowledge and intent, that the question of intent is to be determined from all the facts, that all persons are presumed to intend the natural consequences of their voluntary acts, and that in this

case no specific intent was involved. While such instructions as those last referred to are ordinarily sufficient on the question of intent, it cannot be said that they are sufficient where the jury had been told that intoxication could not be a defense, to cure the errors referred to and to cover the issue which should have been presented to the jury.

In *People* v. *Nichols,* 69 Cal. App. 214 [230 Pac. 997, 1000], the court said:

"Under the provisions of section 4½ of article VI of the state constitution, whether the giving of an erroneous instruction does or does not constitute reversible error depends in large measure upon the conclusion of the court of appeal as to whether there has or has not been a miscarriage of justice by reason thereof. If it appears to the appellate court that the conclusion of the jury would have been the same with or without the instruction, then, and in that case, it cannot be said that a miscarriage of justice has resulted, but, where there is a strong conflict in the evidence and the determination of the cause depends upon the credibility to be given to certain witnesses by the jury, and the court gives an erroneous instruction which tends to disparage such witnesses in the estimation of the jury, then and in that case we think that the people are not entitled to rely upon the provisions of the constitutional provision referred to, but that the defendant has not, under such circumstances, been given a fair and impartial trial to which all persons accused of crime are entitled."

It is not possible to say that the result would have been the same if this jury had been permitted, under proper instructions, to pass upon the question of whether or not the appellant was intoxicated to a degree which deprived him of the power to understand and consent to what was going on. Under such circumstances it cannot be said that a miscarriage of justice has not occurred. The appellant was entitled to have the issue of the effect of his intoxication fairly presented to the jury and, in our opinion, this was not done.

For the reasons given the judgment is reversed, and the cause remanded for a new trial.

Jennings, J., and Marks, J., concurred.