[Crim. No. 4997. In Bank. June 9, 1950.]

THE PEOPLE, Respondent, v. DANIEL CANAS SANCHEZ, Appellant.

James E. Walker for Appellant.

Fred N. Howser, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

SCHAUER, J.—Appellant Sanchez (hereinafter sometimes called defendant) and one Noble were jointly charged with (count 1) assault with a deadly weapon (knife) on one Rodriguez, (count 2) assault with a deadly weapon (knife) on one Maldanado, (count 3) robbery of Rodriguez, and (count 4) violation of section 503 of the Vehicle Code in taking the automobile of one Perez with intent to deprive the owner of possession thereof. A jury found defendant guilty on counts 1, 3 and 4, and guilty of the included offense of simple assault on count 2. Noble was acquitted on counts 1 and 4 and convicted of the included offense of simple assault on count 2; on count 3, although the jury found that he was armed with a deadly weapon at the time of the commission of the robbery, it determined that the offense was of the second degree. A motion for new trial was made and denied and judgment sentencing defendant to the state prison on all four counts was rendered by the court on November 16, 1948, but two days later that judgment was vacated as to count 2 and a new judgment was pronounced, sentencing defendant to the county jail for one day. Defendant's notice of appeal, filed November 24, 1948, recites that he appeals from the ''judgments of conviction made and entered . . . on the 16th day of November, 1948, and from the order . . . denying . . . motion for new trial.'' Since the November 16 judgment as to count 2 had been vacated before the notice of appeal was filed, and since

no appeal has been taken from the judgment of November 18, we interpret this appeal as applicable only to the felony convictions on counts 1, 3 and 4. We have concluded that the judgment on count 1 can be sustained but that the judgments on counts 3 and 4 must be reversed because of errors which relate to (1) Sanchez' sole defense (that he was too intoxicated to have the "particular purpose, motive, or intent" necessary to constitute the particular crimes of which he was convicted on such counts (Pen. Code, § 22)); (2) misconduct of deputy district attorney in referring to an asserted prior conviction of defendant, although there was no evidence of such conviction before the jury; (3) comment of the prosecution and lack of instruction by the trial court as to the effect of Sanchez' failure to take the witness stand.

Defendant called no witnesses and, as indicated, did not testify on his own behalf. To support his defense he relied upon the testimony of the victims of the alleged crimes (prosecution witnesses), the testimony of his codefendant Noble, and a statement made by defendant to police officers the day following his alleged commission of the offenses. The statement, transcribed by a shorthand reporter, was read into evidence by the prosecution. In it defendant declared that he had been drinking liquor for a period of time just prior to the alleged occurrence of the crimes charged, and had no recollection concerning them.

The record discloses that on a Sunday morning in September, 1948, one Perez delivered his automobile to Maldanado, in Santa Ana, for the purpose of having Maldanado paint it. Later in the morning Maldanado, Rodriguez, Noble, and defendant Sanchez met by chance at a café in Santa Ana, "had a beer," and thereafter left for San Juan Capistrano in Perez' automobile. A bottle of gin was purchased en route. After consuming the gin and drinking more beer the four went to the beach near San Juan Capistrano, where another bottle of gin, a fifth of a gallon, was purchased. They then started back to Santa Ana, with Maldanado driving. On the way defendant spilled or poured some gin on Maldanado; Maldanado stopped the car and an altercation arose. Defendant told Noble to "take care of" Maldanado; defendant cut Rodriguez on the face and left arm with a pruning knife; and both defendant and Noble held knives against, but did not cut, Maldanado. The knife held by Noble was a pocket knife which belonged to defendant Sanchez. Noble and Sanchez

together took $20 and a wrist watch from Rodriguez. Sanchez then drove Perez' automobile from the scene, taking Noble with him and leaving Rodriguez and Maldanado by the road.

Maldanado testified that all four persons in the group had been drinking and that he "imagined" defendant was intoxicated. Rodriguez testified that he himself drank very little of the gin. Noble testified that he drank none of the gin but that "Sanchez drank a considerable quantity" of it. According to the statement of Sanchez which was read into evidence, "I remember something . . . about [Noble] taking care of Maldanado and I would take care of [Rodriguez] . . . I don't remember getting mad or spilling gin or anything like that. But I do remember I saw blood on [Rodriguez'] hand, but I don't remember cutting him . . . It is all a blank after that because I don't remember . . . I don't remember driving."

In every crime there must be a joint operation of act and intent. (Pen. Code, § 20.) In addition to this general criminal intent, two of the crimes with which this appeal is concerned require proof of a specific intent: An element of the crime of robbery is the intent to steal (*People* v. *Crowl* (1938), 28 Cal.App.2d 299, 308 [82 P.2d 507]; 22 Cal.Jur., Robbery, § 5); and an element of the crime denounced by section 503 of the Vehicle Code is the "intent to either permanently or temporarily deprive the owner [of the vehicle taken] of his title to or possession of such vehicle." It is code law that "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act." (Pen. Code, § 22; 7 Cal.Jur., Criminal Law, § 26.)

Defendant requested and the trial court refused to give the following instruction (numbers in brackets are inserted for convenience of discussion):

"[1] You are instructed that our law provides that 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.' This means that such a condition, if shown by the evidence to have existed in the defendant at the time when allegedly he committed the crime charged, is not of itself a

defense. It may throw light on the occurrence and aid you in determining what took place; but when a person in a state of intoxication, voluntarily produced in himself, commits a crime, the law does not permit him to use his own vice as a shelter against the normal, legal consequences of his conduct.

"[2] However, when the existence of any particular motive, purpose or intent is a necessary element to constitute a particular kind or degree of crime, the jury, in determining whether or not such motive, purpose or intent existed in the mind of the accused, must take into consideration the evidence offered to prove that the accused was intoxicated at the time when the crime allegedly was committed.

"[3] Thus in the crime of assault with a deadly weapon with which the defendant . . . is accused in this case, in Count 1 of the information, the specific intent to commit an assault with a deadly weapon, to-wit, a knife, is a necessary element of the crime . . .

"[4] Thus in the crime of robbery of which the defendant . . . is accused in this case in Count 3 of the information, the specific intent to steal property from the possession of the owner by means of violence, force or fear with the intention of permanently depriving the owner of his property is a necessary element of the crime.

"[5] Thus in the crime of driving and taking the . . . [automobile] as charged in Count 4 of the information . . ., the specific intent to either permanently or temporarily deprive said owner thereof of his title to, or possession of such vehicle is a necessary element of the crime.

"[6] As to any Count in which it is found that the defendant . . . did not have the required intent to commit the crime charged, he must be acquitted."

■ The substance of paragraph [1] of the refused instruction was covered by other instructions which were given. However, the trial court erroneously failed to give any instruction covering the rule correctly stated in paragraph [2]. The People urge that refusal of the entire instruction was correct because paragraph [3] thereof is erroneous in declaring that a specific intent is a necessary element of the crime of assault with a deadly weapon. However, assuming that under the circumstances of this case proof of a specific intent in the use of the knives was not essential (see *People* v. *McCoy* (1944), 25 Cal.2d 177, 188-194 [153 P.2d 315]; see, also, *People* v. *Marseiler* (1886), 70 Cal. 98, 100 [11 P. 503]; 3 Cal.

528

Jur., Assault and Battery, § 14; *cf. People* v. *Raner* (1948), 86 Cal.App.2d 107, 112-113 [194 P.2d 37]; *People* v. *Crowl* (1938), 28 Cal.App.2d 299, 305 [82 P.2d 507]), nevertheless, because of the charges in counts 3 and 4, respectively, of robbery and violation of section 503 (Vehicle Code), an instruction stating the rule of paragraph [2] was essential in relation to the trial on those counts. Explanatory paragraphs [4], [5] and [6] are correct and pertinent and the error of the requested instruction could easily have been cured by striking out paragraph [3]. ■ A trial court's duty is not always adequately performed by merely reading to the jury the wholly correct requested instructions; it is that court's duty to see to it that the jury are adequately informed on the law governing all elements of the case submitted to them to an extent necessary to enable them to perform their function in conformity with the applicable law. (*People* v. *Putnam* (1942), 20 Cal.2d 885, 890-891 [129 P.2d 367]; *People* v. *Bender* (1945), 27 Cal.2d 164, 175-176 [163 P.2d 8].) In the light of all the circumstances of this case the failure to inform the jury of the rule stated in paragraph [2] cannot, insofar as counts 3 and 4 are concerned, be excused by the fact that defendant's proposed instruction was in part erroneous.

■ The effect of this error was enhanced by the trial court's giving, after an instruction in the language of section 20 of the Penal Code, *supra,* a further instruction in the language of section 21: "The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity." As a proposition of abstract law, isolated from its context, the instruction is correct; but, in a case where intoxication is relied upon as a partial defense, it is misleading for it tends to divert the attention of the jury from the possible effect of intoxication upon "intent or intention." Nor is the error ameliorated by the general instruction that "unless defendant acted 'knowingly' and 'wilfully,' he is not guilty as charged, and in this connection it is to be noted that the defendant may urge that although he may have been guilty of a technical violation of the law, he was innocent of any guilty purpose in connection therewith. The Court charges you, as a matter of law, however, that ignorance of the law, or of the effect of the law, is no excuse. The word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit

the act or make the omission referred to. It does not imply any intent to violate law or to injure another, or to acquire any advantage.'' Such instruction did not direct the jury's attention to the applicable partial defense of intoxication.

■ Defendant complains of references by each of the two deputy district attorneys who argued for the People, at the close of evidence, to an asserted prior felony conviction of Sanchez. No such conviction was charged against him for the purpose of increasing his punishment; he did not take the stand, so there was no place for reference to a felony conviction as affecting his credibility (Code Civ. Proc., § 2051); furthermore, there was no evidence before the jury that he had been previously convicted of felony. Nevertheless the People on appeal make the remarkable assertion that ''It is not difficult to understand how the prosecuting attorney might conceivably believe that the fact of Sanchez' prior felony conviction was before the jury.'' The deputy district attorney who began the People's argument to the jury said, ''You have the defendant Sanchez and the defendant Noble, both convicted of a felony——''; he then apparently endeavored to make it clear that his mention of Sanchez in this connection was a slip of the tongue, and his error may well have been one of inadvertence. There is, however, no semblance of inadvertence in, or justification for, the following deliberate misconduct of the deputy district attorney who concluded the People's argument:

''Eliminate, if you can, the testimony of Noble and the failure of Sanchez to testify and, as Mr. Walker [Sanchez' counsel] says, there are only three people in this case who have been convicted of a felony. That is what he says. I wonder why his defendant didn't take the stand? Is he in the same group? [The reference to ''*three* people . . . who have been convicted of a felony'' may have been inadvertent; actually, the evidence shows that only Maldanado and Noble had been previously convicted of felony; the suggestion that *Sanchez* had been previously convicted of felony could not have been inadvertent, for it had been clearly pointed out by the deputy district attorney who opened the People's argument and by Mr. Walker, defendant Sanchez' attorney, that there was no evidence before the jury that Sanchez had suffered such a prior conviction.]

''MR. WALKER: Just a minute, I object. I don't think counsel correctly quoted my statement.

"[THE DEPUTY DISTRICT ATTORNEY] : The people who have been convicted of a felony in this case are the ones you said, Noble, Maldanado——

"MR. WALKER: And that is all.

"[THE DEPUTY DISTRICT ATTORNEY] : Is that all? Sanchez is in the case. He is the defendant.

"MR. WALKER: I am objecting to counsel's argument and assign it as prejudicial misconduct and ask that the jury be instructed to disregard it.

"THE COURT: No comments. You went outside the record."

After this failure by the trial court to give a specific and proper admonishment, the deputy district attorney continued his argument. And the instructions given later did not contain anything particularly directed toward removing the effect of the prosecuting attorney's misconduct or the court's failure to act immediately and vigorously toward curing it.

The People point out that this is not a situation of insistently repeated misconduct of the prosecuting attorney; that "A trial judge is in a better position than is an appellate court to determine the probable effect of misconduct of counsel and his conclusion on that question will not be disturbed by an appellate court unless in the circumstances it is plainly wrong." (*People* v. *Sarazzawski* (1945), 27 Cal.2d 7, 15 [161 P.2d 934].) The trial judge here, in ruling on defendant's motion for new trial, said, "the sum total of the whole thing would be that the jury went out believing that Sanchez never had been convicted of a felony." The trial judge's determination on this point is not substantiated by the record. His single statement, "No comments. You went outside the record," was clearly insufficient to dispel the effect of the deputy district attorney's insinuations and statements as to Sanchez' asserted, unproved conviction of felony. Furthermore, the record shows, the trial judge based his ruling in part on his stated belief that "regardless of what impression the jury gained I think the evidence is so overwhelming that I don't see how the jury could have reached any other conclusion." Except as to count 1 the last quoted statement is clearly incorrect; as to counts 3 and 4, even if we assume that there is overwhelming evidence that defendant did the *acts* in question, nevertheless the evidence as to his specific *intent* is close and the inferences to be drawn from such evidence are sharply conflicting. Therefore, the improper reference to a previous conviction was prejudicial. (See *People* v. *Duvernay* (1941), 43 Cal.App.2d 823, 828-829 [111 P.2d 659];

*People* v. *Ford* (1948), 89 Cal.App.2d 467, 470-471 [200 P.2d 867].)

██ Also prejudicial were the prosecuting attorney's reference to defendant's failure to take the stand and the trial judge's omission to properly instruct as to the effect of such failure. Under section 13 of article I of the California Constitution, the trial judge and prosecuting attorney are permitted limited comment upon the failure of the defendant to testify in his own behalf. (*Adamson* v. *California* (1947), 332 U.S. 46 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223].) This comment, however, is restricted to statements that defendant's failure to explain or deny evidence against him, when he could reasonably be expected to do so, may be considered by the jury as indicating the truth of such evidence. (*People* v. *Adamson* (1946), 27 Cal.2d 478, 490 [165 P.2d 3].) "The jury is not free under the constitutional provision to give defendant's failure to testify any consideration it sees fit, any more than court or counsel are free to make any comment thereon they see fit." (Concurring opinion, Traynor, J., *People* v. *Albertson* (1944), 23 Cal.2d 550, 584 [145 P.2d 7].) "Since a conviction must be supported by something more substantial than silence, it is essential that the jury be instructed as to the limitations upon the consideration that it may give a defendant's failure to testify." (*Id.*, p. 586 of 23 Cal.2d.) In the present case, since defendant relied upon the partial defense of voluntary intoxication, sufficient to destroy both his volition and his memory, he was entitled to the type of instruction indicated above. The failure to give such instruction is especially prejudicial because the evidence of intoxication, if believed, would have presented a rational explanation for his failure to deny the evidence against him.

██ As to count 1, the charge of assault with a deadly weapon is sustained by uncontradicted evidence showing not merely an *assault* in the technical sense (Pen. Code, § 240) but an actual battery (Pen. Code, § 242) with a weapon and by means of force unmistakably coming within the purview of section 245 of the Penal Code. Under these circumstances no proof of specific intent was essential to sustain the conviction and, in the light of the entire record, it does not appear that the errors which require a reversal as to counts 3 and 4, caused any miscarriage of justice on count 1. (See Cal. Const., art. VI, § 4½; Pen. Code, §§ 960, 1258, 1404.)

For the reasons above stated, the judgment upon count 1

and the order denying a new trial as to that count are affirmed; the judgments upon counts 3 and 4 and the order denying a new trial as to those counts are reversed and the cause is remanded for a new trial on those counts.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.