[Crim. No. 3517. First Dist., Div. One. Oct. 21, 1958.]

THE PEOPLE, Respondent, v. FRANK F. ARRIOLA, Appellant.

John R. Golden, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant appeals from judgment of conviction of grand theft after jury trial. He admits the sufficiency of the evidence but contends the court erred (1) in giving instruction on unconsciousness; (2) in omitting "intent" from an instruction on intoxication.

### EVIDENCE

Shortly before noon Fred Clapp was sitting at the bar of the Big Horn Bar drinking a cup of coffee. He occasionally did banking for the proprietor and on this occasion the proprietor had just given him $175 in currency, a check and a bank book. Clapp had placed all three in the left breast pocket of a heavy outer shirt (mackinaw type) he was wearing. Defendant entered the tavern and obtained a bottle of beer. Louis Hanga sat down at the bar next to defendant and started to write down an address. Defendant was "kind of half laying on the bar, and kind of reaching over on my arm." Defendant touched Hanga's arms and shoulders. Police Officer Farnlacher, who was off duty and had come into the tavern to cash a check, observed defendant place his hands on Hanga's thigh. Hanga told defendant to move away. Defendant then sat on a stool next to Clapp and asked the

latter "What is the matter? . . . Why don't you like me" and when Clapp said "Don't bother me" defendant said "Just because I am Mexican, is that it?" Defendant tried to hold a conversation with Clapp but the latter made no reply but continued drinking his coffee. Defendant touched the left upper part of Clapp's breast and shoulder—"it was so quick I never paid much attention to it." Officer Farnlacher had noticed the bulge in Clapp's shirt pocket and could see the bank book and part of the money. Farnlacher saw defendant press against Clapp with his left hand and then saw just the tip of defendant's right hand go into Clapp's left breast pocket and then into defendant's right hand pocket. Defendant then left the tavern. Ascertaining from Clapp that the money and bank book were gone, Farnlacher followed by Clapp left the tavern and saw defendant walking rapidly down the street. The officer then saw defendant put his right hand in his right coat pocket and "place something which had a green color in his left hand and put it in his left-hand pocket." Farnlacher ran up and caught defendant, showed him his star, informed him that he was an officer and that he was placing him under arrest. As Farnlacher attempted to handcuff defendant's left hand, defendant spun around, put his left hand in his left pocket and threw some of the money to the ground. One or two bills clung to the flap of his pocket. Apparently the check was thrown out at the same time. It and enough bills with those in the pocket to total $175 were picked up. Defendant said "What the hell are you trying to do, frame me?" On the arrival of the patrol wagon a search of defendant revealed the bank book in defendant's right coat pocket.

As defendant's defense was intoxication to the point of not being able to form an intent to steal, we will now detail the evidence on that issue.

Defendant testified that he had been going from bar to bar drinking tequila all night. He started drinking again early in the morning of the theft. He had a detailed memory of the bars he had visited, the taxis he rode in, and whom he was with until a scuffle or fight which he claims took place the morning of the theft on the sidewalk near the Big Horn Bar. All is then a blank until he found himself in a jail cell. That morning two friends of his had given him a ride and let him off at a certain street corner. He then walked to 16th and South Van Ness. He said "I went to see a fellow I know. We talked in the street." He had a scuffle with this man.

Later he said that it was "just somebody I met on the street." When asked if he had ever seen the man before he said "Well, yes and no." When asked ". . . is it 'yes' or is it 'no' " he replied "Well, it could be 'no' . . ." He did not know whether the man was drunk or sober. The two of them just stopped on the street and started talking. He did not remember the conversation but there was a fight or scuffle. First he said he did not know whether he hit the other man, then he said he did not. Defendant remembers lying on the sidewalk, getting up bleeding, "full of blood," and walking away. That is the last he remembers. Defendant alluded to the fact that there was blood on his shirt and suit when he was at the jail. He was vague about the number of drinks of tequila he had, and said that ordinarily he did not drink beer.

Farnlacher testified that prior to the arrest he did not observe blood on defendant or his clothing. However, defendant resisted arrest and with only one cuff on him, Farnlacher had to throw defendant to the sidewalk in order to subdue him. When defendant arose Farnlacher noticed fresh blood on his chin and on his blouse or coat. Farnlacher talked to defendant at the police station. He appeared to understand the questions he was asked and the witness was able to understand him. At that time he said as he had at the time of his arrest, "What are you trying to pin on me?" and "I didn't do it." Farnlacher testified that at the time of arrest he could smell alcohol on defendant's breath and that "there was a certain slurring as to his speech" in talking to the officer. Later at defendant's cell defendant spoke without the slur. The witness would not say that defendant was intoxicated. "I would say that he had been drinking, but not to the extent of intoxication." When the witness ran after defendant, the latter did not stagger at all but walked straight "about the fastest you could walk without breaking into a run." Clapp testified that he smelled beer on defendant's breath and that when defendant came into the tavern he "kind of staggered . . . I couldn't say he was drunk, but he kind of was leaning on the bar. I couldn't say he was drunk. That I don't know, but I know he was drinking beer." All defendant drank in the Big Horn Bar was half a bottle of beer.

Grand theft, insofar as is pertinent here, is the felonious stealing or taking of the personal property of another from his person. (Pen. Code, §§ 484, 486, 487, subd. 2.) To

complete the crime, the intent to steal or take the property is necessary in addition to the actual stealing or taking (*People* v. *Corenevsky*, 124 Cal.App.2d 19, 23 [267 P.2d 1048]) and the court so instructed.

1. *Unconsciousness.*

 Defendant's position on these instructions is not clear. He apparently mentions them as not curing his claim of error in the intoxication instruction. However, he states without specification of any kind that he does not concede that they should have been given nor their correctness. They embodied the substance of section 26, subdivision 5, Penal Code, and were fully correct. They did not contain and are not required to contain the second sentence of section 22, Penal Code, hereafter discussed. It was so held in *People* v. *Baker* (1954), 42 Cal.2d 550, 575 [268 P.2d 705], *People* v. *Anderson* (1948), 87 Cal.App.2d 857, 860 [197 P.2d 839], and *People* v. *McNichol* (1950), 100 Cal.App.2d 554, 557 [224 P.2d 21]. The instruction contained a phrase to the effect that the rule of law on unconsciousness does not apply in a case in which the mental state of the person in question is due to voluntary intoxication resulting from the use of intoxicating liquor. While this statement is a proper one to be used in an instruction on unconsciousness occurring other than from the voluntary use of drugs and intoxicating liquor, here it may have aggravated the failure of the court to instruct upon the question of intent as related to voluntary intoxication from the use of liquor. It is questionable whether the instruction should have been given as defendant at no time claimed that his actions were due to unconsciousness resulting from the blows he claims to have received. His defense was that by reason of intoxication he was unable to form the required intent. As held in the above cases, where intoxication is involved, even if it leads to unconsciousness or a temporary interference with the mental facilities, the situation is governed by section 22 and not by section 26, subdivision 5, dealing with unconsciousness from other causes. In any event, as they were correct instructions on the subject, there was no prejudice in giving them.

2. *Intoxication.*

 The court gave CALJIC Number 78 which is an extensive instruction on intoxication intended, however, to be used where the crime charged does not require specific intent. It included the first sentence of section 22: "No act committed

by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition." It stated that intoxication was not a defense but "It may throw light on the occurrence and aid you in determining what took place." It did not include the second sentence to the effect that where the existence of intent is a necessary element of the crime the jury in determining the intent with which a defendant acted "may take into consideration the fact that the accused was intoxicated at the time. . . ."

It has repeatedly been held in a case requiring proof of specific intent that an instruction embodying the substance of section 22, Penal Code, must be given and that to give only the first sentence of that section without giving the second sentence is error. (*People* v. *Coyne*, 92 Cal.App.2d 413, 415 [206 P.2d 1099]; *People* v. *Romo*, 24 Cal.App.2d 119, 121-122 [74 P.2d 306].) If the defendant, as here, offers no instruction upon the subject it is the court's duty to give it of its own motion. (*People* v. *Baker, supra*, 42 Cal.2d 550, 576; *People* v. *Sanchez*, 35 Cal.2d 522, 528 [219 P.2d 9].)

It is true that the evidence of intoxication, including defendant's own testimony on the subject, was quite weak. As hereafter pointed out, there was no substantial evidence to support defendant's claim that he was intoxicated to the extent of not being able to form an intent to steal. It is very doubtful that it would have been error for the trial court to have refused to instruct on intoxication at all. However, as said in *People* v. *Coyne, supra*, 92 Cal.App.2d 413, 417, the trial judge evidently felt that the evidence was sufficient to require an instruction on intoxication because he gave one. He should have given a proper one. The serious question is whether the giving of such a palpably erroneous instruction was prejudicial. In turn, this depends upon the question of whether there is any substantial evidence upon which the jury could have found that defendant was intoxicated to the extent of being unable to form an intent to steal. Certainly the evidence of the prosecution witnesses would not have supported such a finding. At most their evidence was that defendant appeared to have been drinking, that at one time he staggered, and that at first his talk was slurred. Defendant's testimony, considered alone, might have supported such a finding, although it was quite fantastic. But balancing his acts against his testimony that he did not know what he was doing, eliminates any support for such a finding. His actions in the bar, running his hands over Hanga, his skill in taking

the contents of Clapp's pocket without him knowing it, are typical of intentional pickpocketing and are entirely inconsistent with his being so drunk that he did not know what he was doing. Additionally, his leaving the tavern immediately upon robbing Clapp, his lack of staggering in his fast attempt to get away, his changing the money from the pocket of his coat which was nearest to Clapp when they both were at the bar to a pocket on the opposite side, his statement to the officer that the latter was trying to frame him and ''I didn't do it'' are likewise completely irreconcilable with his claim that he did not know what he was doing. Either with or without an instruction containing the second sentence of section 22, it is inconceivable that under the facts of this case a jury would have found that defendant did not have an intent to steal and would not have convicted defendant.

■ Actions of a defendant may completely refute his testimony as to his inability to form an intent to do the thing which he did. In *People* v. *Keeling,* 152 Cal.App.2d 4, 12 [312 P.2d 407], we said, in a homicide case, ''Defendant's actions, before, during and after the killing completely refute his own statement that he 'blacked out.' '' In *People* v. *Clifton,* 186 Cal. 143 [198 P. 1065] (homicide), the defendant claimed to have been intoxicated to such an extent as to be unable to understand the questions asked him by the police when first arrested. The trial court had refused to give the defendant's instruction to the effect that the jury could disregard the defendant's answers if it found that the defendant was so intoxicated as not to be able to understand the questions. The reviewing court upheld the refusal to so instruct, stating that ''In view of the character of the answers given it is difficult to imagine that defendant did not fully understand both questions and answers'' (p. 150) and that every witness who testified regarding the matter testified that although the defendant was somewhat under the influence of liquor, the defendant apparently sufficiently understood and intelligently answered the questions. In *People* v. *Coston,* 82 Cal.App.2d 23 [185 P.2d 632] (homicide), the trial court gave an erroneous instruction to the effect that forgetfulness may not be an element of unconsciousness. In holding that there was no prejudice in the error, this court stated (p. 40): ''There must be something more than his [the defendant's] mere statement that he does not remember what happened to justify a finding that he was unconscious at the time of that act. Here the only purported evidence of unconsciousness was

the defendant's own statement . . . There was no evidence upon which the jury would have been justified in finding that defendant did not know what he was doing at the time of the shooting.'' So, in our case, the only purported evidence of impossibility to form an intent to steal, was defendant's own statement that he did not know what happened. ▌ In view of his acts and the testimony of the other witnesses, it is inconceivable that had the jury been properly instructed on intoxication, the jury could have come to any conclusion other than one of guilt.

In the cases cited by defendant such as *People* v. *Sanchez, supra,* 35 Cal.2d 522, *People* v. *Baker, supra,* 42 Cal.2d 550, 575, *People* v. *Coyne, supra,* 92 Cal.App.2d 413, and *People* v. *Romo, supra,* 24 Cal.App.2d 119, the reviewing court, in holding the failure to give proper instructions on intoxication prejudicial, expressly stated that there was substantial evidence of intoxication. Thus in the Sanchez case the court said that ''the evidence of intoxication, if believed, would have presented a rational explanation for his [the defendant's] failure to deny the evidence against him.'' (P. 531.) In the Baker case the court said that there was ''ample evidence of voluntary intoxication.'' (P. 575.) The Coyne case set forth the testimony of eyewitnesses to the shooting concerning the defendant's intoxication. In the Romo case, the court stated that the evidence was conflicting and would have supported ''either conclusion which might have been reached by the jury upon the question as to whether or not the appellant was so intoxicated at the time as . . . not to have understood what was being done.'' (P. 121.) ▌ As said in *People* v. *Baker,* 42 Cal.2d 550 [268 P.2d 705], and cases there cited, '' '. . . The circumstances of the case determine whether the failure to instruct the jury constitutes prejudicial error.' '' (P. 576.) The lack of substantial evidence that defendant was intoxicated to the extent of not being able to form an intent to steal distinguishes our case from those cited by defendant.

The judgment is affirmed.

Peters, P. J., and St. Clair, J. pro tem.,* concurred.

A petition for a rehearing was denied November 20, 1958.

*Assigned by Chairman of Judicial Council.