[Crim. No. 4202.  First Dist., Div. Three.  Oct. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN PERSHING REAKSECKER, Defendant and Appellant.

John Pershing Reaksecker, in pro. per., and Alan H. Davidson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—This is an appeal from a conviction of burglary.

At about 4 o'clock in the morning of March 2, 1962, the janitor of a bar on the Napa-Vallejo Highway was forced by a masked man who was carrying a pistol to allow entry to the building and to point out the location of the cash register. He was struck over the head by something which felt like a bag with sand in it. He was forced to lie on the floor and heard an exchange of men's voices. Shortly after this, the manager of the bar entered, saw a masked man, drew his own gun, fired, killed the intruder, and then saw another masked man coming through the doorway. This was appellant. The manager shot at him, and appellant fled after firing a single shot which, he stated variously, was by accident, or perhaps to discourage pursuit. Appellant was found lying on the front seat of an automobile. A stocking made into a sap by being stuffed with a potato was in the back of the car. He had tossed the gun into a farm machine, had thrown away the stocking mask, and had reversed his jacket because, he said later, the outside had a patch which might be recognized. Both men had been wearing masks made of women's stockings, in which slits for eyes had been made. A few days before the events described above, appellant had asked his landlady for old stockings, saying he wished to use them as oil filters, and she had given him some which were similar to those used by appellant and the other man, Anderson.

About four years earlier, appellant had been temporarily employed by the bar and he knew where its money was kept, and had told his companion, Anderson, about the money.

In his statement to the police, which was received in evidence, appellant had stated that the purpose of entering the bar was to "get some booze," not money, that he had worn the stocking because he "didn't want to be caught in any whiskey beefs—thefts," that he put the stocking on before entering the building and adjusted it so that he could see through slits that had been made in it.

At trial, he testified that Anderson and he were driving around looking for a place where they could get something to drink, that they stopped at the bar which they later entered, that Anderson went in first and came out with a bottle of whiskey, told appellant to go in, told him to take the gun with

him, handed him a "rag" and told him to bring it, too. He testified that he did not put the "rag" (the stocking) over his face until after he had entered and had seen someone's legs on the floor (this was Anderson's body), and had then donned the rag to cover a scar and to avoid recognition. He testified that the only plan had been to "get some booze," that he did not know what time of morning it was and that he thought maybe Anderson had got the bottle of whiskey legitimately, though he had thought it was a possibility that Anderson had stolen it.

### The Issue of Instruction on Intoxication

Appellant's first contention is that the court should have instructed the jury, on its own motion, for no instruction on the subject was requested, on the provisions of Penal Code section 22, that the jury may take intoxication into consideration in determining the intent with which the accused committed the acts.

The testimony of appellant relating to the subject of drinking or intoxication is this: He was at a "beer parlor" between 7 and 10 p.m. on the evening of March 1st. During this period of time, he "definitely" drank more than three draft beers. He and Anderson then returned to the apartment where they cooked and ate dinner. Appellant went to bed between 10:30 and 11 p.m., but finished an article which he had been reading before going to sleep. Early in the morning of March 2d, he was awakened by Anderson, who poured him a glass of wine. He got up, dressed, and got into Anderson's car. As he was "pretty drowsy," he slept "most of the way" to Napa. After Anderson parked the car next to the bar, he split a large can of Falstaff beer with appellant.

At no time did appellant testify that he was intoxicated, nor did he use any of the colloquialisms which commonly describe drunkenness, either in its advanced or inchoate stages, and the actual amount of liquor which he consumed between 2 o'clock and 5 in the morning was one glass of wine and part of a large can of beer. His defense, such as it was, seems to have been that he was an innocent patron awaiting the opening hour of the bar, not that he was intoxicated. The giving of the unrequested instruction on intoxication might have been objectionable to him.

Besides, appellant's testimony militates against the claim of intoxication which would destroy the essential specific intent to steal. Masking and arming, and reversing a jacket

because a patch on it might cause identification immediately following flight, show not a befuddled brain but one producing quick and purposeful activity. Again, the meticulous description given by appellant, on the morning of his arrest and at trial, of almost every detail of the whole episode, demonstrates his possession of both ample perceptive powers and retentive memory which are incompatible with such intoxication as would preclude specific intent. If the instruction on intoxication should in some cases be given by the court *sua sponte,* and even if it would have been proper to give it in this case, there is at least no prejudicial error to have omitted it in this case, where the evidence of drinking is minimal and the evidence of capability to form intent is strong. (*People* v. *Turville,* 51 Cal.2d 620, 633 [335 P.2d 678]; *People* v. *Arriola,* 164 Cal.App.2d 430, 435, 436 [330 P.2d 683].)

### The Issue of the Confession

Appellant contends that his written confession was obtained by a deputy sheriff's using a friendly attitude, which had developed in a series of former arrests, mostly for drunkenness, by which he was led into harmful answers. He contends, too, that some of the questions were unfairly compound. He contends that the jury should have been cautioned by the judge on these points. A reading of the testimony and of the statement discloses no injustice. The jury was carefully instructed on the required voluntariness of a confession. If more specific instructions were desired, they should have been presented by appellant's former counsel.

Judgment affirmed.

Draper, P. J., and Salsman, concurred.

A petition for a rehearing was denied October 30, 1963.