[Crim. No. 4299.   Third Dist.   Apr. 10, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED D. GARCIA, Defendant and Appellant.

Marvin Marks, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Marjory E. Winston, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant was tried before a jury on a charge of aggravated assault upon a police officer, a felony denounced by Penal Code section 245, subdivision (b). The jury found him guilty of the lesser offense of simple assault upon a peace officer, punishable as a felony under Penal Code section 241. He appeals from the conviction.

Defendant assigns error in the trial court's rejection of his request to instruct the jury that it could find defendant guilty of the lesser offense of simple assault, a misdemeanor defined by Penal Code section 240.[1]

A defendant is entitled to jury instructions on his theory of the case as disclosed by the evidence, no matter how weak; the fact that the evidence may not be of a character to inspire belief does not justify refusal of an instruction based thereon; however incredible a defendant's testimony, he is entitled to an instruction based upon the hypothesis that it is entirely true; it is prejudicial error to withdraw from the jury consideration of such evidence. (*People* v. *Miller,* 57 Cal.2d 821, 829 [22 Cal.Rptr. 465, 372 P.2d 297]; *People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281].) As indicated by *People* v. *Morrison,* 228 Cal.App.2d 707, 712 [39 Cal.Rptr. 874], there are three general situations which affect the court's duty to give instructions upon a lesser included offense. First, where there is evidence which could absolve the defendant from guilt of the greater offense but would support a finding of guilt of the lesser offense, the instruction is mandatory.

Second, where the evidence would not support a finding of guilt of the lesser offense—for example, where the defendant denies complicity or where the elements of the offenses differ—the instruction is not only unnecessary but is erroneous because not pertinent There is a third or intermediate situation, where proof of the greater offense necessarily includes every element of the lesser offense; in which situation, the instruction is proper but not mandatory and, even if requested, it is

---

[1]Penal Code section 240 defines ''assault'' as follows: ''An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.''

Penal Code section 241 provides in part: ''An assault is punishable by fine not exceeding five hundred dollars ($500), or by imprisonment in the county jail not exceeding six months, or by both. When it is committed against the person of a peace officer or fireman, and the person committing the offense knows or reasonably should know that such victim is a peace officer or fireman engaged in the performance of his duties, and such peace officer or fireman is engaged in the performance of his duties, the offense shall be punished by imprisonment in the state prison not exceeding two years.''

Penal Code section 245, subdivision (b), provides in part: '' (b) Every person who commits an assault with a deadly weapon or instrument or by any means likely to produce great bodily injury upon the person of a peace officer or fireman, and who knows or reasonably should know that such victim is a peace officer or fireman engaged in the performance of his duties, when such peace officer or fireman is engaged in the performance of his duties shall be punished by imprisonment in the state prison not exceeding 15 years; . . . .''

not error to refuse it if the evidence shows guilt above the lesser offense. (See also *People* v. *Allison,* 245 Cal.App.2d 568, 574 [54 Cal.Rptr. 148].)

Shortly after eight o'clock on the evening of the offense Sacramento police officers Reed and Holley were patrolling an area of the city in a patrol wagon. They saw defendant walking down an alley and drove up behind him to stop and question him. Defendant glanced behind and started walking away at a rapid pace. Losing sight of defendant, the officers left their patrol wagon and started to search the area. They found him behind some bushes alongside a house at the side of the alley. Defendant refused to come out, so the officers had to ''help him out.'' Defendant appeared to be quite intoxicated and could produce no identification. The officers decided to arrest him and book him for intoxication in a public place. As they started to walk with him to the patrol wagon he broke away. The officers had to search for him again and found him hiding under a parked truck-tractor. Defendant refused to come out when ordered and the officers had to crawl under the vehicle to drag him out. Defendant resisted strenuously and one of the officers had to hit him on the head with his nightstick. Defendant was lying on the ground with Officer Holley standing guard, while Officer Reed left to bring back the patrol wagon. Defendant remained quite calm for two or three minutes when ''like a cat'' he jumped up with a stick in his hand and swung at Officer Holley. The stick was about 36 inches long and about the circumference of a nightstick. Holley blocked the stick with his hand and started backing away. Defendant kept approaching, swinging the branch and repeating ''You yellow bastard, I am going to make you shoot me.'' Defendant succeeded in striking Holley on the head above the ear. Holley ''saw like stars'' and his knees became weak. Seeing defendant approaching him again, he pulled out and fired his revolver, hitting defendant in the leg. Another officer who appeared on the scene, testified that Holley appeared dazed and was staggering. Neither Reed nor Holley could recall whether they told defendant that he was under arrest, nor does it appear that they identified themselves as police officers. Both were wearing uniforms, however.

Defendant testified that he was too drunk to recognize Reed and Holley as police officers. When he heard the patrol wagon approaching, he assumed it was a truck and ran to get out of its way, finally stepping behind some bushes. He said that he was ''manhandled'' as he came out of the bushes, felt some-

thing hit him over the head and broke away and commenced running. He ran until he felt that the alcohol was "getting the best" of him. He recalled being under a truck. When he heard somebody ordering him to get out, at that point he testified: "So I crawled out through the front of the truck and I defended myself. I picked up a stick to defend myself because I didn't know who it was." He stated that he did not know that the other party was a police officer and did not know if he struck the person.

On cross-examination defendant admitted familiarity with the kind of vehicle the officers were driving, saying that he had seen that kind of vehicle "down on the lower part of town." He volunteered, "[T]hey pulled me around and shoved me around, and I told them not to manhandle me that I would go peaceably—in other words, in peace I would go into the paddy wagon." He admitted knowing that while he was running the people pursuing him were the same ones who "had a hold of . . . [him] down by the paddy wagon."

The present case falls into the first category described in *People* v. *Morrison, supra,* Where a defendant is on trial for assault with a deadly weapon or one of the other aggravated assaults and there is evidence to justify a simple assault verdict, an instruction on the latter is mandatory, at least where the defendant requests it. (See *People* v. *Roth,* 28 Cal.App.2d 522, 528-531 [39 Cal.Rptr. 582]; *People* v. *Yancy,* 171 Cal.App.2d 371, 375-376 [340 P.2d 328]; *People* v. *Ciccerelli,* 123 Cal.App. 48, 49 [10 P.2d 792]; see also *People* v. *Spreckels,* 125 Cal.App.2d 507, 510-512 [270 P.2d 513].)

Here the aggravating element is not use of a deadly weapon or of means likely to cause great bodily injury, but the defendant's reasonable awareness of his victim's identity as a peace officer. Defendant had testified that he was so drunk he did not know Reed and Holley were peace officers. Thus there was some evidence, whether credible or not, which might absolve defendant from the greater offense of assault upon a person reasonably known to be a peace officer and support a verdict of assault upon a person not known to be a peace officer. The trial court erred in refusing to instruct on simple assault.

It is true that on cross-examination defendant made statements which would justify a fact trier in disbelieving his denial of awareness. On cross-examination defendant had used the statement ". . . in other words, in peace I would go into the paddy wagon." Inferably, this statement might mean he

was aware at the time of the offense of the vehicle's character as a "paddy wagon." It might also refer to defendant's after-acquired knowledge of the vehicle's character. He had also "invited" Holley to shoot him. It was the jury's exclusive province to weigh his denials against such countervailing statements. In acting upon the instruction request, the trial court had to indulge in the hypothesis that his claim of ignorance of the officer's status was true. (*People* v. *Carmen, supra,* 36 Cal.2d at p. 773.)

Withdrawal from the jury of the possibility of a simple assault conviction was prejudicial error. (*People* v. *Carmen, supra,* 36 Cal.2d at p. 773; see also *People* v. *Modesto,* 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].) ▆▆ Defendant makes a second contention which we consider because it may arise on retrial. The defense requested and the trial court rejected the following instruction: "Further relating to the relevance of evidence of intoxication of the accused, it may be considered by the jury in relation to the question of whether the accused in fact knew or, in all the circumstances, reasonably should have known that the victim of the alleged assault was a peace officer engaged in the performance of his duties."

▆▆ Although voluntary intoxication is not a defense to crime, Penal Code section 22 declares that the jury may consider the fact of intoxication "whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime . . . ." Where the rule of Penal Code section 22 applies, the court has a duty to convey it to the jury by a proper instruction. (*People* v. *Baker,* 42 Cal.2d 550, 572-573 [268 P.2d 705]; see 1 Witkin, California Crimes (1963), Defenses, § 144, p. 137.) Crimes of specific intent provide the usual occasion for such an instruction. ▆▆ As a general rule, assault prosecutions do not involve the element of specific intent and the instruction on intoxication should not be given. (*People* v. *Corson,* 221 Cal.App.2d 579, 582 [34 Cal. Rptr. 584]; *People* v. *Stephens,* 168 Cal.App.2d 557, 558 [336 P.2d 221].) Specific intent, however, is simply one kind of mental state. (*People* v. *Griggs,* 17 Cal.2d 621, 625 [110 P.2d 1031]; see also California Jury Instructions, Criminal, No. 78-B.) A particular charge may necessarily involve a mental state other than that condition called "specific intent." A necessary element in a violation of section 245, subdivision (b), and vulnerability to the augmented penalty provision of

section 241 is that, at the time of the offense, the accused knew or reasonably should have known of the victim's identity as a peace officer. Knowledge, of course, is not identical with intent. (*Morissette* v. *United States,* 342 U.S. 246, 270 [96 L.Ed. 288, 304, 72 S.Ct. 240].) It does require awareness of the facts. (Pen. Code, § 7, subd. 5.) Intoxication has obvious relevance to the question of awareness, that is, the ability to recognize and comprehend.[2] The instruction requested by defendant was well conceived as a specific application of the "motive" concept in Penal Code section 22. There was ample evidentiary basis for the instruction. The court should have given it or an equivalent.

Judgment reversed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied May 9, 1967, and respondent's petition for a hearing by the Supreme Court was denied May 31, 1967. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.

---

[2]Both section 241 and section 245, subdivision (b), permit conviction upon an alternative not amounting to knowledge, that is, if the person "reasonably should know" of his victim's identity as a peace officer. The latter alternative apparently permits conviction upon proof of a state of facts falling short of actual knowledge. (See *People* v. *Daniels,* 118 Cal. App.2d 340, 343 [257 P.2d 1038].) The distinction is insignificant here, since defendant was entitled to have the jury pass upon the issue of his actual knowledge.