[Crim. No. 8716. First Dist., Div. One. Aug. 26, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES W. FOSTER, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., under appointment by the Court of Appeal, and Paul Mike Goorjian for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOLINARI, P. J.**—Defendant appeals from a judgment entered upon a jury verdict finding him guilty of violation of Health and Safety Code section 11500 (possession of heroin). Defendant contends that the trial court erred in not instructing on its own motion on the issue of voluntary

intoxication and in its comment upon the evidence. He also contends that the arresting officers violated his Fourth Amendment rights. We find none of these contentions to be meritorious.

At approximately 3 p.m. on May 5, 1969, Inspector Martin of the San Francisco police narcotic unit, and three other inspectors, arrived at a "multi-story apartment house" at 745 Fillmore Street. Martin testified that their purpose in going to the premises was to pursue a "narcotic investigation." The four officers entered through the main door of the apartment building and proceeded to apartment number 102. Martin stood outside the apartment door for approximately 15 minutes "listening or trying to determine words of conversation emitting from the premises." He could hear male and female voices inside, but could not determine what was being said. At one point he did hear someone use the term "two-hundred-dollar bag." Based on his experience, Martin understood that the term, in narcotics parlance, referred to a toy balloon containing heroin worth $200.

As Martin was standing in front of the door, he heard a male voice state that "he was going to leave the premises." The door was opened by a male identified as a Mr. Dibbles. Martin identified himself by stating "Police" and by exhibiting his badge. Dibbles immediately "popped a couple of colored objects into his mouth." These objects appeared to be "toy balloons tied down to a ball shape."

Martin observed defendant standing inside the apartment approximately four or five feet behind Dibbles. When defendant saw Martin, he placed a colored object in his mouth. The object resembled the colored toy balloons disposed of by Dibbles. Martin entered the room and approached defendant. Inspector Arrieta, who had joined Martin, told defendant to spit out the object he had placed in his mouth. Defendant then spat out a toy balloon containing a substance subsequently determined to be 1.6 grams of heroin. Martin also testified that another person in the room had 10 balloons containing heroin in his possession.

Defendant testified that he had been drinking about three days when he arrived at the apartment. After approximately 45 minutes inside the apartment, he heard voices outside saying, "Okay, get 'em up; get 'em up." Dibbles then passed by defendant and told him to "Hold this bag. I think I hear somebody in the doorway or the bathroom window." According to defendant, he took the object from Dibbles and "put it in my mouth." When asked the reason for placing the object in his mouth, defendant replied, "I don't know why." With regard to his knowledge of heroin, defendant testified that he had "an idea what it is," but that he had not "possessed any since 1960." He testified that he did not know that the object he had placed inside his mouth contained heroin.

Martin testified that he did not detect "any smell of alcohol" on defendant, and that defendant did not appear to be intoxicated. Martin also testified that he did not observe any contact between defendant and Dibbles or anyone else prior to defendant placing the balloon in his mouth.

■ We advert, first, to the Fourth Amendment contention. The main thrust of defendant's argument is that the police officers had no right to intrude on his reasonable expectations of privacy by listening at the door of the locked apartment for an extended period of time with the hope that someone might open the door. The basis for this contention is the holding in *Katz* v. *United States,* 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], and *People* v. *Edwards,* 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713].

Defendant's reliance on *Katz* and *Edwards* is misplaced. *Katz* held that the listening to and the recording of the defendant's words by means of an electronic device while he was in a telephone booth violated the privacy upon which he justifiably relied and therefore constituted a "search and seizure" within the meaning of the Fourth Amendment. (389 U.S. at p. 353 [19 L.Ed.2d at p. 583].) *Edwards* held that the search of a trash can within a few feet of the backdoor of the defendant's home constituted an unreasonable search and seizure in violation of the Fourth Amendment. (71 Cal.2d at p. 1104.) In the present case the police did not obtain evidence by the use of an electronic device nor was the evidence obtained by them the product of an illegal search and seizure. The conversation heard by the police officers was such as could be heard by anyone present in the common area outside the apartment. The common hallway of an apartment building is not a constitutionally protected area within the purview of *Katz.* (*People* v. *Seals,* 263 Cal.App.2d 575, 577 [69 Cal.Rptr. 861].)

Even assuming that the listening by the officers at the apartment door was improper, such impropriety has no bearing on the validity of defendant's conviction since what was heard in no way affected the legality of the arrest or the discovery of the contraband. It was the officers' observations through the open door from an area which was not constitutionally protected and not the content of what was heard that gave rise to the probable cause for defendant's arrest. The opening of the door was not occasioned by any act or conduct of the officers. In *Seals* we held that the observations of police officers of what was in plain view while they stood in the common hallway of an apartment building, which they had entered without express permission and without a warrant, did not do violence to the Constitution. (At p. 577.) (See *Mann* v. *Superior Court,* 3 Cal.3d 1, 7 [88 Cal.Rptr. 380, 472 P.2d 468].)

■■ Defendant's next contention dealing with the alleged failure of

the trial court to instruct on its own motion on the issue of voluntary intoxication must be considered in the light of the general rule "that the trial court must instruct the jury on the general principles of law relevant to the issues raised by the evidence, even though not requested to do so, but need not instruct on its own motion on specific points developed at the trial. [Citations.]" (*People* v. *Hood,* 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]; see *People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].) In *Wade* the Supreme Court pointed out that the " 'general principles of law governing the case' " are "those principles of law commonly or closely and openly connected with the facts of the case before the court." (At p. 334.) We must, therefore, determine whether, in a prosecution for possession of narcotics, evidence of voluntary intoxication is "commonly or closely and openly connected with the facts of the case before the court," thus requiring an instruction on the issue by the court on its own motion.

Voluntary intoxication is neither an excuse for nor a defense to a crime. (Pen. Code, § 22; *People* v. *Hill,* 22 Cal.2d 863, 866 [141 P.2d 418]; *People* v. *Dorman,* 28 Cal.2d 846, 853 [172 P.2d 686].) In some cases, however, voluntary intoxication may be considered by the trier of fact. The applicable principle is stated thusly in Penal Code section 22: "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

Penal Code section 22 has been construed to mean that voluntary intoxication may not be considered when the crime charged is a "general intent" crime, i.e., one requiring nothing more than the intent to do the proscribed act, but that it may be considered in determining whether a particular purpose, motive or intent actuated the accused. (See *People* v. *Hood, supra,* 1 Cal.3d 444, 458-459; *People* v. *Woods,* 157 Cal.App.2d 617, 622 [321 P.2d 477]; *People* v. *Avanzi,* 25 Cal.App.2d 301, 302 [77 P.2d 237]; *People* v. *Murphy,* 1 Cal.2d 37, 40 [32 P.2d 635]; *People* v. *Burkhart,* 211 Cal. 726, 731 [297 P. 11].) Accordingly, where specific intent is a necessary element of the crime, the jury may consider the fact of the defendant's voluntary intoxication. (*People* v. *Houghton,* 212 Cal.App.2d 864, 868 [28 Cal.Rptr. 351]; *People* v. *Baker,* 42 Cal.2d 550, 572-573 [268 P.2d 705].)

Where the statutory rule that the jury may consider voluntary intoxica-

tion when the actual existence of a particular purpose, motive or intent is a necessary element is applicable, the court has a duty to convey this rule to the jury by a proper instruction and the failure to do so constitutes error. (*People* v. *Baker, supra,* 42 Cal.2d 550, 572-573; see *People* v. *Spencer,* 60 Cal.2d 64, 87 [31 Cal.Rptr. 782, 383 P.2d 134]; *People* v. *Arriola,* 164 Cal.App.2d 430, 435 [330 P.2d 683].)

■ To establish unlawful possession of narcotics, the People must prove three elements: (1) The accused exercised dominion and control over the contraband, (2) he had knowledge of its presence, and (3) he had knowledge of the narcotic character of the material in his possession. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Showers,* 68 Cal.2d 639, 642-643 [68 Cal.Rptr. 459, 440 P.2d 939].) It is apparent that to convict the accused of the crime of unlawful possession of narcotics, the People must, in addition to proving general intent to possess the substance constituting the contraband, prove that the accused had knowledge that the material in his possession was a narcotic.

The People contend that knowledge is not "specific intent." It is true that knowledge is not identical with intent. (*Morissette* v. *United States,* 342 U.S. 246, 270 [96 L.Ed. 288, 304, 72 S.Ct. 240]; *People* v. *Garcia,* 250 Cal.App.2d 15, 20-21 [58 Cal.Rptr. 186].) It is, nevertheless, a mental state. Among the several definitions of "knowledge" are the following: "the fact or condition of being cognizant, conscious, or aware of something"; "the scope of one's awareness"; "extent of one's understanding"; "the fact or condition of apprehending truth, fact, or reality immediately with the mind or senses." (Webster's Third New Internat. Dict.; and see Pen. Code, § 7, subd. 5; *People* v. *Garcia, supra.*) Although the crimes involving specific intent provide the usual occasion for the instruction required under Penal Code section 22 with respect to voluntary intoxication, that statute is not limited to the existence of specific intent but by its language includes the existence of any "particular purpose" or "motive" with which a defendant committed the act in question.

Intoxication has obvious relevance to the question of awareness, familiarity, understanding and the ability to recognize and comprehend. Accordingly, it is properly embraced within the concepts of "purpose" and "motive" delineated in Penal Code section 22. (See *People* v. *Garcia, supra,* 250 Cal.App.2d 15, 20-21.) ■ Therefore, we hold that where knowledge is a requisite element of a crime, the court must instruct, on its own motion, that in determining the existence of such knowledge the jury may take into consideration the fact that the accused was intoxicated at the

time he committed the act in question if there is evidentiary basis for such instruction.

█ We conclude, however, that the error in the instant case was harmless. The record reflects that the jury was properly instructed on the necessary element of knowledge. They heard defendant's testimony that he had been drinking for three days and did not know what was in the balloon. The arresting officers testified that they noticed no signs of intoxication nor did they smell any alcohol on defendant's breath. Defendant's self-serving declaration is therefore the only evidence of intoxication. Upon sighting the police officers, defendant almost immediately attempted to conceal the contraband in his possession by placing it in his mouth. This action clearly refutes defendant's claim that he did not know the substance was contraband; rather, it is indicative of a mental alertness that belies the claim that he was too drunk to know that the substance he was carrying in the balloon was a narcotic. (See *People* v. *Arriola, supra,* 164 Cal.App. 2d 430, 436; *People* v. *Spencer, supra,* 60 Cal.2d 64, 87-88.) Under the state of the record and upon an examination of the entire cause we are of the opinion that the error complained of has not resulted in a miscarriage of justice since it does not appear to us reasonably probable, that were it not for the error, a result more favorable to defendant could have been obtained. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; see *People* v. *Spencer, supra.*)

█ Defendant's last contention is that the trial court's comment on the evidence was improper and "amounted to a directed verdict of guilt." The record reflects that, after less than an hour of deliberation, the jury returned and apparently indicated that it could not reach a verdict. The trial court then made the comments complained of, the pertinent portions of which we set out in the margin.[1]

---

[1]The trial judge stated: "As I pointed out before, it is your responsibility, if you conscientiously can, to arrive at a verdict one way or the other on the case. To reach that end, I am going to exercise the privilege that I have, under the laws of this state, to comment on the evidence, not to try to impose my will upon you in any way, but simply to point out to you, if I can, what I think are the important considerations and the things you should keep in mind in your deliberations." The trial court then proceeded to give a fair summation of the facts adduced after which it stated as follows: "The basic physical facts, as both counsel pointed out to you, are not in dispute. The only matters that are in question are some of the surrounding circumstances and more or less the state of mind and purpose of the defendant. The first thing you should consider, I think, is: Why was the defendant on the premises at all? His statement to you is that he was there for the purpose of delivering fruit to a Mr. Foley, but then he pointed out to you that he didn't really know Mr. Foley all that well, and his prior conduct and relationship with him might raise some question in your mind as to whether there was a valid purpose in his being there for that purpose, or whether he might have been there for the purpose of purchasing narcotics. You should first, I think, consider that situation. Then, secondarily, with

Section 10 of article VI of the California Constitution provides, in pertinent part, that "The court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." In *People* v. *Brock,* 66 Cal.2d 645, 650 [58 Cal.Rptr. 321, 426 P.2d 889], the Supreme Court, in discussing the purpose of this provision, stated as follows: ". . . a trial judge is in a position to assist the jurors in determining what evidence has a bearing on the disputed issues in the case and to aid them in weighing the evidence, and comments which will so assist the jury are of substantial value and should not be discouraged. [Citation.]" ▉ A judge may not, however, exercise the power to comment on the evidence so as to invade the province of the jury. (*People* v. *Huff,* 134 Cal.App.2d 182, 187 [285 P.2d 17]; *People* v. *Brock, supra,* at pp. 650-652.) Accordingly, the judge may not in the guise of comment on the evidence control verdicts by direction either directly or impliedly made, nor may he comment on the guilt of the accused without a discussion of the evidentiary basis for the comment. (*People* v. *Brock, supra,* at pp. 654-655.)

▉ In the instant case the court did not comment, in any manner, upon the guilt of the accused, but merely discussed and analyzed the evidence in an impartial and instructive manner. The court's summation of the evidence eminently demonstrates the proper exercise of the power to comment on the evidence and was of assistance to the jury in clarifying the factual issues and in determining what evidence had a bearing on the disputed issues. Such comments in no way invaded the province of the jury. (See *People* v. *Watso,* 240 Cal.App.2d 773, 776 [50 Cal.Rptr. 31]; *People*

---

respect to how he came into possession of the balloon of narcotics itself. Bear in mind the fact that you have only the defendant's statement to you as to the fact that somebody else handed him the narcotics. You are under no obligation to accept that statement. You may, if the circumstances surrounding indicate to you that is more likely or is a reasonable interpretation of the facts, you may accept that, but you are perfectly free to consider whether or not the reasonable explanation of his possession is that he went to the apartment for the purpose of and did, in fact, purchase his own narcotics, and these were his narcotics that he had in his possession. And, thirdly, you should consider, I think, the circumstance of his putting the narcotics in his mouth and apparently making some initial effort to swallow them and then finding that he could not do so and spitting them out. You should consider whether or not this was the action of a man that was aware of or, on the other hand, unaware of the nature of what he was putting in his mouth; whether that was the behavior of a man conscious of his guilt or a man who was not aware of the fact that what he had was contraband. I think you should give consideration to each of those points and use those, which, as I say, are really the only disputed points, to decide the case."

The court then concluded with another admonition: "Again, you are the sole judge of the facts, and whichever way you resolve those in your own mind, and whichever determination you conscientiously come up with is the determination that you, under your oath, are bound to arrive at; but consider the facts carefully, listen to the arguments and the points at issue of other jurors. And, as I say, if you possibly can, try to arrive at a verdict in this case."

v. *Brock, supra,* 66 Cal.2d 645, 650; *People* v. *Friend,* 50 Cal.2d 570, 576-582 [327 P.2d 97].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied September 20, 1971, and appellant's petition for a hearing by the Supreme Court was denied October 21, 1971.