Opinion
BIGELOW, J.

Procedure and Contentions

Defendant was convicted in a court trial of a violation of Penal Code section 647 subdivision (b) (solicitation for prostitution). Defendant’s prior Penal Code section 1538.5 motion to suppress conversations overheard by the police, had been denied. Defendant was placed on probation with various terms and conditions. Defendant appeals, contending that the trial court erred in denying his motion to suppress. We affirm.

Facts

Two undercover vice squad police officers, on February 15, 1979, at approximately 12:15 a.m., observed a Mr. Rocky Martin sitting on a bus bench. He was wearing a white dress, and on four occasions stood up, pulled his dress up to his groin area and waved his right hand at passing vehicles.
Defendant pulled his car up to a stop at the bench and appeared to engage Mr. Martin in conversation. Mr. Martin then entered defendant’s car and they drove off together; the police followed them in their unmarked vehicle.
Defendant drove to an apartment-business store building, parked his car and defendant and Mr. Martin got out and entered the building. The police saw them go up a flight of stairs and enter one of the apartment units, which they reached by walking into a common hallway on the second floor.
*Supp. 8 The police followed up the same staircase, through an unlocked door and stood in the common hallway next to the closed door of that apartment. By placing their ears within two to three inches of the door, the police heard a conversation between defendant and Mr. Martin wherein defendant asked for specific sexual acts for a specified price; to all of this, Mr. Martin agreed. At this crucial point the police knocked on the door, identified themselves and demanded entry. Shortly thereafter, the police kicked in the door and arrested defendant who was nude; Mr. Martin still had his dress on.
Opinion
The observations of the police officers were made in a common hallway, open to the public and hence from a place where they had a right to be. The conversations were audible through the door of the apartment with the unaided natural ear and were therefore in “plain view.”
Directly in point is the following holding in People v. Foster (1971) 19 Cal.App.3d 649, 653 [97 Cal.Rptr. 94]: “We advert, first, to the Fourth Amendment contention. The main thrust of defendant’s argument is that the police officers had no right to intrude on his reasonable expectations of privacy by listening at the door of the locked apartment for an extended period of time with the hope that someone might open the door. The basis for this contention is the holding in Katz v. United States, 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], and People v. Edwards, 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713].
“Defendant’s reliance on Katz and Edwards is misplaced. Katz held that the listening to and the recording of the defendant’s words by means of an electronic device while he was in a telephone booth violated the privacy upon which he justifiably relied and therefore constituted a ‘search and seizure’ within the meaning of the Fourth Amendment. (389 U.S. at p. 353 [19 L.Ed.2d at p. 583].) Edwards held that the search of a trash can within a few feet of the backdoor of the defendant’s home constituted an unreasonable search and seizure in violation of the Fourth Amendment. (71 Cal.2d at p. 1104.) In the present case the police did not obtain evidence by the use of an electronic device nor was the evidence obtained by them the product of an illegal search and seizure. The conversation heard by the police officers was such as *Supp. 9 could be heard by anyone present in the common area outside the apartment. The common hallway of an apartment building is not a constitutionally protected area within the purview of Katz. (People v. Seals, 263 Cal.App.2d 575, 577 [69 Cal.Rptr. 861].)” (Italics added.)
Defendant contends that the holding in Lorenzana v. Superior Court (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33] changes the rule stated in Foster, supra, 19 Cal.App.3d 649. To the contrary, we hold that Lorenzana, supra, restates the Foster rule as follows, at page 634 of 9 Cal. 3d: “These cases clearly demonstrate the salutary rule of law that observations of things in plain sight made from a place where a police officer has a right to be do not amount to a search in the constitutional sense. On the other hand, when observations are made from a position to which the officer has not been expressly or implicitly invited, the intrusion is unlawful unless executed pursuant to a warrant or one of the established exceptions to the warrant requirement.”
A more recent and even more compelling authority is the case of People v. Kaaienapua (1977) 70 Cal.App.3d 283 [138 Cal.Rptr. 651]. In that case, the manager of a boarding house informed the police of activities he had observed concerning trafficking in narcotics by defendant in his rented room; he asked for their assistance. The manager gave the police permission to enter a room adjacent to defendant’s room. Without the use or aid of any type of mechanical or electronic equipment, the officers, “by placing their ears [next] to the dividing wall, were able to overhear conversations and noises from which they concluded that narcotics activity was occurring inside [of defendant’s] room. From outside [defendant’s] front door, the officers were also able to smell the odor of marijuana emanating from within.” (At p. 286.) The court there held that the observations were not subject to suppression, after reviewing Katz, supra, 389 U.S. 347, People v. Triggs (1973) 8 Cal.3d 884 [106 Cal.Rptr. 408, 506 P.2d 232] (disapproved on other grounds), Lorenzana, supra, 9 Cal. 3d 626, People v. Guerra (1971) 21 Cal.App.3d 534 [98 Cal.Rptr. 627] and White v. Davis (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222] as well as California Constitution, article I, section 1 (protecting the right to privacy).
Our ruling is limited, as it must be, to the specific facts before us; not before us is a surveillance of the kind where officers would enter common hallways of dwellings to see if, by chance, something could be overheard which could lead to the discovery of criminal activity.
*Supp. 10 There appears to be a common thread running through the decisions giving approval to police investigations under certain circumstances. In each case the police were able to articulate information or observations which gave them probable cause to investigate further. What guidelines are to be followed for determining whether the police can further investigate? These, it appears, are the same as those which apply for determining whether or not an investigative stop or detention is justified.
We paraphrase the rules in In re Tony C. (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957] as applicable here in deciding, as we do, that further investigation by the police was justified. “.. . [t]he circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends [to place under surveillance] is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience (People v. Superior Court (Kiefer) supra, 3 Cal.3d [807] at p. 827 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]), to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that [such further investigation] predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. (Terry v. Ohio, supra, 392 U.S. at p. 22 [20 L.Ed.2d at pp. 906-907].)” (In re Tony C., 21 Cal.3d at p. 893.)
The probable cause to justify such a surveillance would not have to rise to the level of probable cause to arrest or to search or even to detain for purposes of investigation. The trial courts, on a case-by-case basis, will be able to apply this rule to the many various and differing sets of facts that come before them even as they do now apply the respective rules applicable in the areas of detention, arrest or search and seizure.
The judgment (order granting probation) is affirmed.
Ibáñez, P. J., concurred.