Filed 9/24/20  P. v. Roachford CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRIAN ANTHONY ROACHFORD,<br><br>    Defendant and Appellant. | B299360<br><br>Los Angeles County<br>Super. Ct. No. MA075272 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles A. Chung, Judge.  Affirmed.

G. Martin Velez, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Brian Anthony Roachford of resisting two executive officers, attempting to take a law enforcement vehicle, and vandalism. He appeals, and we affirm.

## BACKGROUND

An amended information charged Roachford with two counts of resisting an executive officer (Pen. Code, § 69)[1] (counts 2 and 4), one count of attempted taking of a law enforcement vehicle (Veh. Code, §§ 664 & 10851, subd. (b)(2)) (count 3), and one count of vandalism over $400 (§ 594, subd. (a)) (count 5). The information alleged Roachford served three prior prison terms and had two prior serious felony convictions.

The trial centered on events on the morning of December 7, 2018. Wendy Peterson testified she was driving her minivan to work on the 14 Freeway north in Lancaster when she saw a white sedan stopped in the middle of the freeway. Roachford and another man stood next to a truck stopped on the right shoulder. Roachford walked onto the freeway toward the white sedan, and Peterson and all the other drivers on the freeway stopped their cars to avoid hitting him. Worried about Roachford's safety, Peterson called 911. Roachford tried to open the back driver's side door on the sedan. The car drove off with Roachford hanging onto the door handle, and dragged him a short distance until he let go and fell onto the freeway. Injured, he walked toward Peterson's minivan.

As Peterson talked to the 911 operator, Roachford pounded on her window, looking scared and unwell and saying he needed help. He tried to open all the minivan's doors, slamming his body into the sides of the minivan. Roachford climbed on top of the

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

2

minivan, and then slid down the windshield onto the hood and walked away, taking off his shirt. As traffic began to move past him, he returned and again begged Peterson for help, banged on her window, tried to open all the doors, and climbed back on top of the minivan.

Peterson saw a black and white police car driving southbound. Roachford got off the top of the minivan, hopped over the center divider, and wandered into slowing traffic on the southbound lanes. A car's side mirror hit his arm. The police car pulled into the freeway median and uniformed deputies got out of the car. Roachford walked toward them and they tried to handcuff him, but after a brief struggle, Roachford ran away. One of the officers tased him, he fell to the ground, and the police tied his hands and his feet.

Peterson's minivan was dented, scratched, and smeared with blood. Repair of the damage cost over $3,500, and Peterson paid a $500 deductible.

Sheriff's Deputy Russell Williams drove to the scene with his partner Deputy Ulise Ruiz in response to a radio call, with the car's lights and sirens on. Deputy Williams saw Roachford walking against traffic in the southbound lane of the freeway. Dodging other vehicles, he parked the car facing southbound in front of Roachford. Roachford, who was very sweaty although it was cold and he wore a tank top, was staring blankly into the distance. He complied with a command to put his hands on the driver's side fender of the police car. Deputy Williams was on his right side and Deputy Ruiz was on his left. Deputy Williams reached for Roachford's right arm and told him to put his hands behind his back, but "[h]e was so sweaty and covered in blood it was like grabbing a wet noodle." Deputy Ruiz reached for

Roachford's left wrist, but was unable to keep his grasp as Roachford fought to break free, flailing his arms side to side and moving his body back and forth. Deputy Williams told Roachford to stop fighting and made more than five failed attempts to get Roachford's arms behind his back, but Roachford resisted, tightening his muscles and becoming very rigid. He screamed, "I need to get out of here," turned to the right, and threw an elbow at Deputy Williams's face. Deputy Williams jumped back.

Roachford lunged to the driver's door and grabbed the handle, yelling, "I'm going to take your car." He opened the door one to three feet, pushing Deputy Williams into the side of the car and breaking the side mirror. The sheriff's car was running with the keys in the ignition and all the deputies' gear inside, and Deputy Williams was afraid Roachford would drive off. Deputy Williams lunged forward and managed to shut the door with both hands, but Roachford opened the door again. Deputy Williams grabbed Roachford's right arm with both hands and pulled him away from the door. He lost his grip and Roachford ran southbound toward moving traffic while the deputies told him to stop running. Deputy Ruiz pulled out his taser and tased Roachford, who fell onto his stomach three or four feet away.

After five seconds Roachford began to kick and yell, and Deputy Ruiz warned he would tase him again if he kept struggling. The deputies got on top of Roachford and struggled to handcuff him as he kicked, thrashed his body side to side, and tried to stand up. Roachford yelled he had insects in his anus and his mouth and he needed to get them out, reaching inside the back of his pants. After about five minutes, additional deputies arrived, and they managed to restrain Roachford, handcuff him, and hobble his legs together. Eventually they took the hobble off

4

and he was able to walk to a gurney. Paramedics took him to the hospital, where he was medically cleared.

Based on their training and experience, the deputies thought Roachford was under the influence of PCP, although they did not know whether his blood or urine was tested. PCP could cause hallucinations and paranoia, rigid muscles, elevated body temperature, aggression, and agitation.

The parties stipulated that Roachford was on parole on the day of the incident.

The jury convicted Roachford on all counts. On count 3 (attempted driving or taking of a law enforcement vehicle without consent), the jury found true that in committing the offense, Roachford attempted to take or drive a Los Angeles County Sheriff's Department Patrol Vehicle. The trial court found true that Roachford had two prior serious felony convictions and three prior prison terms. The court sentenced him to six years in state prison on count 2 (resisting an executive officer/Deputy Williams), doubling the upper term of three years under the Three Strikes law. The court stayed the sentences on the other counts under section 654, and struck the prior prison term enhancements.

## DISCUSSION

Roachford argues the trial court erred when it instructed the jury that his defense of voluntary intoxication did not apply to the counts of resisting an executive officer.

The jury instructions on counts 2 and 4 (resisting executive officers Williams and Ruiz in the performance of their duty, § 69) told the jury the prosecution had to prove Roachford used force to resist the executive officer, the officer was performing his duties,

5

and when Roachford acted, he knew the executive officer was performing his duties.

The instructions on count 3 (attempted unlawful taking of the patrol car, Veh. Code, § 10851, subds. (a) and (b)) required the prosecution to prove Roachford attempted to take a vehicle (the patrol car) without the owner's consent, and "intended to deprive the owner of possession or ownership of the vehicle for any period of time." The instruction continued: "If you find the defendant guilty of unlawfully taking or driving a vehicle, you must then decide whether the People have proved the additional allegation that the defendant took or drove an emergency vehicle on call. To prove this allegation, the People must prove that: 1. The vehicle was a distinctively marked law enforcement vehicle; 2. The vehicle was on an emergency call when it was taken; AND 3. The defendant knew that the vehicle was on an emergency call." (See Veh. Code, § 10851, subd. (b)(2).)

The court instructed the jury it could consider evidence of Roachford's voluntary intoxication "only in deciding whether the defendant acted with the specific intent required in Count 3. . . . In connection with the crime charged in count 3, the People have the burden of proving beyond a reasonable doubt that the defendant acted with the required specific intent. If the people have not met this burden, you must find the defendant not guilty of count 3. You may not consider evidence of voluntary intoxication for any other purpose. Voluntary intoxication is not a defense to the crimes charged in counts 2, 4, and 5."

In closing, the prosecutor argued Roachford himself stated he was going to take the patrol car. The additional allegation in count 3 was proven by photographic evidence the patrol car was distinctively marked, the deputies testified they were on

6

an emergency call, and the car's lights and sirens were on, so Roachford knew the car was responding to an emergency. Voluntary intoxication was a defense to this count only, and for the defense to be valid, "he had to have been so high that he didn't understand what was happening so much so that he couldn't form the intent to try to take the vehicle." To the contrary, Roachford told the deputies he was going to take their car. The defense argued Roachford did not know what he was doing that day because he was under the influence, perhaps of PCP.

Roachford argues the court was required to instruct the jury that voluntary intoxication was also a valid defense to the two counts alleging a violation of section 69. Although trial counsel did not object to the voluntary intoxication instruction as given, we must address the merits of a claim of instructional error affecting substantial rights. (*People v. Bedolla* (2018) 28 Cal.App.5th 535, 544.) As we conclude the claim has no merit, we do not address Roachford's argument that failure to object was ineffective assistance of counsel.

Section 29.4 provides: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, . . . [the] *knowledge* . . . with which the accused committed the act. (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a *required specific intent. . . .*" (Italics added.) This language means "[e]vidence of voluntary intoxication is inadmissible to negate the existence of general

criminal intent." (*People v. Atkins* (2001) 25 Cal.4th 76, 81.)
" 'A crime is characterized as a "general intent" crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a "specific intent" crime when the required mental state entails an intent to cause the resulting harm.' " (*Id.* at p. 86.)

Although distinguishing general intent and specific intent is "notoriously difficult" (*People v. Hood* (1969) 1 Cal.3d 444, 456), section 69 is an example of that distinction. The first part of subdivision (a) penalizes "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law." (§ 69, subd. (a).) Attempting by violence to deter or prevent an officer from performing a duty is a specific intent offense, because the defendant must act with the *intent* to cause harm by preventing the officer from performing the duty. (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1420.) But the second part of subdivision (a), the offense of which Roachford was convicted, penalizes anyone "who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty." (§ 69, subd. (a).) This is a general intent offense, because the defendant must act only with the *knowledge* that the victim is an officer doing his duty, without any separate intent to cause a certain outcome. (*Rasmussen*, at pp. 1419-1421.) Intoxication was not a defense.

Roachford cites *People v. Foster* (1971) 19 Cal.App.3d 649, 655, and *People v. Reyes* (1997) 52 Cal.App.4th 975 (*Reyes*), to support his argument that voluntary intoxication is a defense to general intent crimes when actual knowledge is an element. *People v. Foster* held voluntary intoxication was relevant to

8

defend against the charge of possession of heroin, a general intent crime requiring knowledge.  (*Foster*, at p. 655.)  But the statute then in effect, section 22 (the predecessor to section 29.4), allowed evidence of voluntary intoxication " 'whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime.' "  (*Foster*, at p. 654.)  By contrast, the statute in effect at the time of Roachford's trial, section 29.4, states in subdivision (a) that voluntary intoxication is not relevant to the defendant's capacity to form "any mental states for the crimes charged, including . . . *knowledge*," and in subdivision (b) that evidence of voluntary intoxication is admissible only to show whether a defendant "actually formed a required specific intent."  (Italics added.)

The defendant in *People v. Reyes* was charged with the receipt of stolen property, which required the prosecution to prove the property was stolen, the defendant possessed it, and the defendant knew the property was stolen.  (*Reyes*, *supra*, 52 Cal.App.4th at p. 984.)  Conscious possession of stolen property was not enough; additional evidence must show the defendant knew the property was " 'tainted.' "  (*Id*. at pp. 984-985.)  But simply receiving stolen goods with the knowledge they were stolen is not a crime if the defendant intended to restore it to the owner:  " 'The critical factor is the defendant's intent at the time he receives or initially conceals the stolen property from the owner.  The intent to restore must exist at the moment the stolen property is accepted. . . .  If the defendant received or concealed stolen property with general criminal intent to aid the thief, or to deprive the owner of possession . . . he possesses the requisite wrongful intent.' "  (*Id*. at p. 985.)  "[W]ith regard

to the element of knowledge, receiving stolen property is a 'specific intent crime.' " (*Ibid.*)

*People v. Reyes* has been criticized as based on outdated and inapplicable authority. (*People v. Berg* (2018) 23 Cal.App.5th 959, 969.) In any event, it is easily distinguishable here.[2] All the prosecution had to prove is that Roachford knowingly resisted an officer engaged in performing his duty. The second part of section 69, subdivision (a) does not require any additional intent or goal, or any knowledge beyond that the officers were doing their duties. The trial court was not required to instruct on voluntary intoxication as a defense to counts 2 and 4.

And even if the court had erred when it restricted the jury's consideration of voluntary intoxication to count 3, it would be state law error, requiring reversal only if there was a reasonable probability the error affected the verdict adversely to Roachford. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1134-1135.) We see no such probability here. Although it was free to consider Roachford's voluntary intoxication on count 3, in finding him guilty and finding true the allegation, the jury necessarily found he was able to form the intent to deprive the officers of the use of the patrol vehicle, and able to know the patrol car was on an emergency call. It is not reasonably probable the jury would

---

[2] *People v. Moore* (2018) 19 Cal.App.5th 889, 894, states: "For example, the crime of resisting arrest requires the perpetrator to know the person they are resisting is an officer, and thus evidence of voluntary intoxication is admissible to show the defendant did not know. (*Reyes*, [*supra*, 52 Cal.App.4th] at pp. 985-986.)" *People v. Quarles* (2018) 25 Cal.App.5th 631, 635 quotes this passage, and in turn Roachford quotes it in his opening brief. *Reyes* does not even mention the crime of resisting an officer, and makes no such holding.

at the same time conclude his voluntary intoxication made Roachford unable to know the deputies were officers performing their official duty and acquit him on counts 2 and 4.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


LAVIN, Acting P. J.


DHANIDINA, J.

11